BALDWIN, J.
By the true construction of the lease between the heirs of Rush and the appellee Moyers, the latter was to be entitled to a waygoing crop, whether the term should expire by efflux of time, or at the end of a previous year, by reason of the event contemplated and provided for by the parties. This is apparent from the stipulation, that Moyers was not to farm “more than one half of the cleared land in a year,” and that “at any time he should give up the land, the one half was to be clear,” (that is, of a crop) “and ready for tillage.” This stipulation could only have been founded upon the understanding that the tenant was to have the privilege of sowing a fall crop in one half of the cleared land, the last year of his term; for, as the term was not to expire, in any event, until the first of April, and the tenant was inhibited from cultivating more than one half of the cleared land at all in any one year, it follows that without such privilege the tenant would have had no benefit from the lease; ^inasmuch as the inhibi *724 tion would have prevented him from cultivating1 one half the cleared land, and the danger of not reaping what he might sow the other also: unless we suppose that the parties fell into the absurdity of providing that there should be no fall crop in the moiety which the tenant was not to cultivate at all. This construction of the lease is fortified by the circumstance that there was a fall crop in the land, belonging to previous tenants, at the commencement of the term, and by the pleadings in the cause; both bill and' answer tacitly taking for granted the privilege of a fall crop under the lease, if the premises had not been sold under the decree.
By the sale under the decree, the purchasers Mason and Short acquired a title to the premises paramount to that of the lessors the heirs of Rush, and a right to the immediate possession, but none to the rent. The effect of the sale would have been to abrogate the lease and exonerate Moyers the tenant from the rent in question, but for the stipulation that the tenant was to surrender possession at the end of the year in which such a sale should be made; by force of which the lessors were bound to assure to the tenant the enjoyment of the premises for that year of the term. If Mason, one of the purchasers, had done this for himself and his co-lessors, the tenant would have been bound to the lessors for the rent of that year. But this he did not do. On the contrary, his copur-chaser and coappellant Short prohibited Moyers from putting in a fall crop, and by the pretensions of both Mason and Short in regard to the crop of corn and oats, they asserted their right to the immediate possession of the premises. That right they did not enforce by an ouster of the tenant; but their right to reap the waygoing crop, in the event of its being put in by Moyers, they could, and, the evidence justifies the belief, would have enforced; and he acted discreetly in declining to give them an opportunity *'of doing so. Under these circumstances, they were not warranted in afterwards assuming towards Moyers the relation of landlord, for the purpose of coercing payment from him of the rent in question. If he could have defended the attachment on the ground that they were not his landlords, (as to which I express no opinion) and thereby defeated the 'recovery of the whole year’s rent, he was not bound to do it. It was competent for him to place his defence upon the just and equitable ground that he was entitled to an apportionment or abatement of the rent. That was a defence which he could not make at law, in any form, or by any mode of proceeding, there not having been an actual eviction; and it could only, be asserted in a court of equity. And the evidence in the cause is sufficient to justify the allowance that has been made of 200 dollars, as the fair and reasonable abatement of the rent.
I am therefore of opinion that there is no error in the decree of the circuit superior court affirming that of the county court.
AUI/EKT, J.
It was held in Harris v. Carson,. 7 Leigh 632, that where land was leased for a fixed and determinate period, the offgoing tenant was not entitled in virtue of any supposed custom to the way-going crop. The tenant, in the case under consideration, claims relief in consequence of his being prevented from putting in a crop, which he could not have reaped until after the determination of his term. Unless such a right was secured to him by the contract of lease, the ground upon which his claim rests will fail him. By the contract, he rented from the heirs of Rush a farm for three years at the annual rent of 300 dollars, the term to commence on the 1st of April 1824. The lease was of an improved farm, and for cultivation ; the tenant restrained from timber except for firewood ''and repairs. At the commencement of his term, a portion of the land was in crop; for a privilege is reserved to the previous tenants to use the barn to get out their grain ‘ ‘then sowed on said land.” The land is situated in a quarter of the state where small grain is the principal crop. And as it appears that the previous occupants had the privilege retained to them to secure their crop growing in the spring of 1824, when the term commenced; unless the tenant was entitled to the waygoing crop, he would have bound himself to pay a money rent of 300 dollars annually for three years, and have been entitled to but two crops of small grain from which to make it. Such a contract would have been unequal; and though it was competent for the parties to enter into it, the circumstances are entitled to some consideration in ascertaining the meaning of the terms actually contained in the written agreement. If the terms of the contract left the intention of the parties in more doubt than I think they do, those circumstances might tend to shew that the parties contracted in contemplation of the right of the tenant to take three crops in consideration of the three years rent. But it seems to me the words of the agreement-can only be satisfied by the recognition of such a right. The lease restricts the tenant from cultivating more than one half of the cleared land in any one year; and then provides that at any time he should give up the land, the one half was to be clear and ready for tillage. Though the writing speaks of his giving up the land at any time, a previous part of it explains this, and shews that bjr this phrase the parties meant, at the end of any one year of the term, and not at any time within a year. Reference was made to a suit then depending to subject the land to sale, which might put an end to the lease before the three years expired; and it was provided that in the event of a sale, the lessee was to give the at the end of the *year he should receive notice. So that whether he held on to the end of the term or not, neither party contemplated a surrender of the possession at any other time than the 31st of March. The phrase “clear and fit for tillage” can only refer to *725 the ground being in crop; for the land was all cleared. The agreement to have one half clear and fit for tillage must mean, free from crop; and free from crop on the 1st of April of each year: thereby distinctly recognizing the right to have the other half then in culture. At that season of the year and in that country, the only crop which could have been in the ground, according to the ordinary course of husbandry, was the crop of small grain put in the preceding fall. If the contract recognized the right to sow, the right to reap would follow. And in this mode the tenant would be entitled to take the three crops, for which he was to pay' the three years rent. The parties themselves, in the pleadings, appears to have put this construction on the contract; for the defendants do not, in their answers, deny the right of the tenant to the waygoing crop, but contend that they did not interfere with the enjoyment of it.
But if by the agreement the plaintiff was entitled to the waygoing crop, the next en-quiry is, what has prevented him from enjoying it? He remained in possession until the end of his term. It was in his power to have sowed, and it would have been soon enough to have complained when the defendants should have actually interfered to prevent him from reaping. This objection, at first view, seemed to be conclusive ; and I was inclined to think that whatever loss the tenant may have sustained, it resulted from his own omission, and he was entitled to no redress. A more careful attention to the facts in the record has satisfied me that this impression was incorrect. If there had been no change in the relation which the parties bore to each other, and the original lessors or their assignees had ^remained the landlords, the objection would have been decisive against the plaintiff. For though the landlord, differing in opinion with the tenant as to the correct construction of the lease, might have warned him not to sow, and declared that if he did he should not reap, such a declaration, not accompanied by any act disturbing the tenant during his term, would have furnished no ground of complaint, much less a foundation on which to lay a claim for damages. But the relation of landlord and tenant according to the terms oí the original agreement did not continue. When the lease was made, the parties to it contemplated the probability of the term being terminated before the three years expired, and they provided for that event. In fact it was so terminated; the land was sold under a decree, and the defendants were the purchasers. The lease was made pen-dente lite, and the purchasers came in under a title paramount to that of the tenant. As purchasers they had a right to the immediate possession, unless, indeed, the decree contained some provision to protect the tenant; and that does not appear, nor is it pretended. The tenant, as against the purchasers, claiming in that character and not as assignees in fact or in law of the lessors, could assert no right under his agreement with the lessors. He became a mere occupier of the premises at the will of the purchasers, liable to be turned out at any moment. Under these circumstances he could not safely do any act against their consent. Though his construction of the agreement was correct, and, so far as his immediate lessors were concerned, he could have asserted his rights against them; against the defendants, purchasers of the property, it would have afforded him no protection. The tenant, in this state of things, called on the defendants immediately after their purchase, to know what he was to do. Then was the time, if the purchasers intended to permit him to hold according to the terms of the *lease, to have announced their determination. But this was not done. They both warned him not to sow a fall crop, declaring that if he did they would reap it. One of the joint purchasers admits in his answer that they asserted their right to possession, and alleges an agreement with the plaintiff, that he was to go on with the fallowing; that they the purchasers would put in the fall crop; and that the plaintiff, instead of the 300 dollars rent, should only pay one third of the corn and oats. Such an agreement is not proved; but the allegation in the answer shews that they disavowed at that time the contract of lease, and insisted on their superior right to the possession. The tenant had made preparations for putting in the crop, but was prevented from doing so by the declarations of the defendants. Under the circumstances it was his duty not to seed against their consent. The land was theirs, and they had the right to the immediate possession, and to put in the fall crop themselves, as they asserted their intention to do. For some reason not appearing, they failed to put in the crop themselves, and when the term had nearly expired, they assumed the character of landlords, and claimed the benefit of the contract, although they had repudiated it in the first instance, and so deprived the plaintiff of the advantage he might have derived from it.
In this proceeding their conduct was oppressive. In fact they were not entitled to any portion of the rent reserved by the agreement. But the plaintiff acquiesced in their claim, either because he supposed it to be just, or because he thought that as purchasers they occupied the position of the original lessors. Acting under the mistaken impression that they were entitled to a portion of the rent reserved, he could not have defended himself on the trial of the attachment as to the residue, for it was not a case for apportionment, as there was no eviction from a part of the demised premises. *It is indeed very questionable whether at law he could have made any defence. The common law writ of replevin, if it could have been maintained in such a case, was abrogated by the act of 1823. And the act of 1819 speaks of the writ of replevin only in cases where *726 goods are distrained for rent. In Redford v. Winston, 3 Rand. 148, two of the judges thought that replevin, either at the common law or under the statute, did not lie in the case of an attachment, and a third considered the question as of little consequence since the act of 1823; from which it may be inferred that he did not suppose it would lie under the statute, as that act merely abrogated the common law remedy. The case of Redford v. Winston decided, that as the law then stood, the tenant was precluded from making any defence which might call in question the truth of the landlord’s oath ; and one of the judges remarked, that for any wrong thereby done to the tenant, he was left to his action at law, or bill in equity to stay proceedings. The act of 1827 permits the tenant to appear and contest the landlord’s right to sue out such attachment ; and provides, that if it shall be made to appear that the lessor had no just cause to suspect the tenant would remove, the attached effects shall be restored. As the restoration of the attached effects in one aspect of the case, and the order of sale in the other, are the only proceedings prescribed, and there is no provision for ascertaining the amount of rent, it would seem that the landlord’s grounds of suspicion that the tenant will remove can alone be contested under this act. But it is unnecessary to pursue this matter farther, or give any definite opinion upon it. In this case there was no eviction from any part of the demised premises, and there could therefore be no, apportionment at law. And if the tenant could have appeared and defeated the whole claim by shewing that the defendants were ^entitled to no portion of the rent, it is not for them to object that he has failed to do so, by acknowledging that they were entitled to a part of the rent, the effect of which acknowledgment was to deprive him of a legal defence as to the residue.
Nor do I conceive that this is an attempt to recover unliquidated damages in equity. The defendants, as purchasers, were not bound by the agreement. The plaintiff could maintain no action on it against them for any breach of the covenants. And since they had, as purchasers, a right to immediate possession, he could not have sued them for the exercise of it. If, after they had asserted a claim to the whole rent reserved by that agreement, they might be considered as having recognized the obligation the agreement imposed upon them, it is still not very apparent how the tenant could have proceeded against them at law. It seems to me,that he has pursued the only course which afforded a certain and adequate remedy, and that under the circumstances it was a proper case for the jurisdiction of a court of equity, to make a proper and just abatement, after the tenant admitted his liability as to part.
The evidence is satisfactory to prove that the abatement made was no more than he was justly entitled to.
. I think, therefore, that both decrees were right and should be affirmed.
BROOKR, J.
There is some difficulty, on the pleadings in this case, in ascertaining whether the defendants Mason and Short are to be treated as purchasers under the decree for the sale of the land, or as landlords according to the lease. If they are to be treated as purchasers under the decree,, they certainly could not sue out the attachment on the ground that the tenant was about to remove his effects and leave the state. If they are to be treated as landlords and entitled +o sue out an attachment, surely the plaintiff might *at law, on the return of the attachment, have proved that he did not intend to remove his effects and leave the state, and that there was no ground for the charge, and have quashed the attachment. But the main charge in the bill is, that as tenant he was prevented from sowing a fall crop. If so, and he was entitled under the lease to sow the fall crop to be reaped the next summer, the injury could only be redressed by recovery of damages at law, and of consequence he could not come into the court of chancery. But was he entitled under the lease to sow a fall crop to be reaped the next year? His term was to end the April following, and I se-». nothing in the lease which entitled him to sow a fall crop to be reaped after that period. Harris v. Carson, 7 Leigh 632. As to understanding the lease differently by inferences from circumstances not found in it, (for example, the circumstance that the preceding tenants were allowed to sow a fall crop) I cannot think that stich circumstances are to be looked to for any such purpose. Nor do I think that the tenant’s being only allowed by the lease to cultivate half the cleared land gave him a right to sow a fall crop the last year of his term. If the lease permitted him to sow only two fall crops in the three years, he may have made a bad bargain, but I do not think I can make a better one for him upon inferences not warranted by the terms of the lease. But how was he prevented from sowing the fall crop the last year of his term? There is not proved any act of the defendants to prevent him. It is' true there is some evidence that he was warned by the defendants not to sow a fall crop which he would not be permitted to reap; but whether this warning was given in the character of landlords or of purchasers does not appear.
It could not be in the character of landlords, as, though one of the purchasers, James Mason, was one of the lessors, he was united in the lease with several others, who are not parties in the case, *and he alone was not authorized to warn the plaintiff off the land. It appears to me, the tenant might have had other motives for declining to sow a fall crop. He may have been advised that his lease did not allow him to do so; as he remained on the land till the end of his term. I think that according to the correct construction of the lease, the tenant was not authorized to sow a fall crop the last year of his term, though he was bound to pay *727 the rent: but if he was so authorized, he might have defeated the attachment at law by shewing that the defendants were not his landlords, and also have recovered damages for the seizure of his property. It is said he only wanted an apportionment of the rent, and for this he must come into the court of chancery. But his bill is only against the defendants as purchasers, and only one of them was a lessor. As purchasers, there is nothing in the record to entitle them to the rent under the lease. On that ground the decree is wrong. To apportion the rent, the court ought to have had before it all the lessors of the plaintiff, or their representatives, in order to ascertain what portion of the rent was due.
On these grounds I think the decree ought to be reversed; first, because, if the defendants are to be treated as purchasers, the remedy of the plaintiff was at law for the wrongful distress of his property; secondly, because, if they are to be treated as landlords, they alone were not entitled to seize the property of the tenant, not being entitled to the lease.
Decree affirmed.
LANDLORD AND TENANT.
I. Creation of Relation.
II. Kinds of Tenancies.
1. At Will or by Sufferance.
2. Year to Year.
3. For Life.
4. Joint Tenancies and. Tenancies in Common.
III. Leases.
1. Requisites and Validity.
2. Covenants.'
a. To Repair and Leave in Repair.
b. For Quid Enjoyment.
c. Of Fitness of Premises.
3. Construction.
IV. Termination of Lease.
1. Agreement.
2. Attornment.
3. Cancellation.
4. Death of Lessor.
5. Forfeiture.
6. New Lease.
7. Notice of Adverse Claim.
8. Notice to Quit.
9. Purchase of Reversion,
10.Re-entry and Eviction.
V.Assignment of Lease.
VI.Crops and Improvements.
VII. Estoppel of Tenant.
1. Generally.
2. To Deny Landlord's Title.
3. Adverse Possession of Tenant.
VIII. Renewal in General.
IX.Rent.
1. In General.
2. Who Entitled to Rent.
3. Who Liable for Rent.
4. Apportionment and Abatement.
5. Interest.
6. Lien.
7. Payment.
8. Set-Off.
9. Recovery.
a. Assumpsit.
b. Attachment.
c. Covenant.
d. Debt.
e. Distress.
(1) Right to Distrain.
(2) Property Liable.
(3) Proceedings to Distrain.
(a) Constitutionality.
(b) Warrant and Affidavit.
(c) Hearing and Determination.
(d) Levy.
(e) Sale.
(f) Bonds.
(4) Wrongful Distress.
X. Actions in General.
1. Landlord against Tenant.
a. To Recover Possession.
b. To Recover Damages.
c. For Inj unction.
2. Landlord against Third Persons.
3. Third Persons against Landlord.
4. Tenant against Landlord.
5. Tenant against Third Persons.
XI. Evidence.
I. CREATION OF RELATION.
No Particular Words Necessary. — No set form of words is necessary to constitute a lease, and in doubtful cases the nature and effect of an instrument must be determined in accordance with the intention of the parties, which may be collected from the whole instrument. Upper Appomattox Co. v. Hamilton, 83 Va. 319, 2 S. E. Rep. 19S; Mickie v. Lawrence. 5 Rand. 571. So a contract between two persons that one should have certain land and negroes during the life of the other, paying annually a certain sum therefor, is not a sale but is sufficient to constitute a lease. Mickle v. Lawrence, 5 Rand. 571.
By Payment of Rent. — The relation of landlord and tenant may be proved by very slight evidence, and it has been held that the payment of rent by an alleged tenant to the owner is sufficient evidence to establish the relation. Virginia, etc., Co. v. Hoover, 82 Va. 449, 4 S. E. Rep. 689.
Reservation of Part of Crop Does Not Create, — A party in possession of land, but having no title thereto, was authorized by the owner to rent it on shares. This was not considered a lease as the reservation of a part of the crop was not incident to the reversion, and thus gave no right of distress. Lowe v. Miller, 3 Gratt. 205, 46 Am. Dec. 188.
The owner of land, furnishing another with necessaries for the support of his family, contracts with him for the raising of crops, and agrees to pay him one-half of the crop raised for his services. It is agreed that the owner shall reimburse himself out of the other share of the crop for the advances made. This contract does not make the parties landlord and tenant, it Is only a method of paying for services. Parrish v. Com., 81 Va. 1.
Occupancy by Permission of Owner. — It may he stated as a general rule that the law will imply a tenancy whenever there is an ownership of land on the one hand, and an occupation by permission on the other, for in all of such cases it will be presumed that the occupant intended to pay for the use of the premises. Hanks v. Price, 32 Gratt. 107.
Mere occupancy of land does not necessarily imply the relation of landlord and tenant, yet if the occupant acknowledge the title of the owner, and *728 continue to occupy the land by his leave and license, he ceases to he amere trespasser, and his possession is that of him whose title he has acknowledged. He cannot, therefore, hy afterwards acknowledging the title of another he considered, consistently with good faith and fair dealing, to hold under the latter adversely to the former until after notice in some way to the claimant, or those claiming under him, whose title he first acknowledged. Wilcher v. Robertson, 78 Va. 602.
Acceptance of Lease by One in Possession under Contract to Purchase. — The possession under a contract of purchase may be determined by the acceptance of a lease, and thereafter the relation of landlord and tenant exists between the parties. Locke v. Frasher, 79 Va. 409.
By Occupancy of One Joint Lessee. — Where one of six joint lessees of land enters upon and occupies the premises in accordance with the agreement made with the owner and signed by all, the fact that the remaining lessees do not enter upon the premises does not prevent the occupancy of the one from being the occupancy of all, and they are all lessees of the landlord regardless of their relations.interse. Howell v. Behler, 41 W. Va. 610, 24 S. E. Rep. 646.
II KINDS OF TENANCIES.
1. AT WILL OR BY SUFFERANCE.
What Constitutes. — Where a tenant agrees by writing under seal that he will surrender possession when requested by purchaser, he becomes a mere tenant at will or by sufferance. Harrison v. Middleton, 11 Gratt. 627.
Same — Admission in Bill and Answer. — Where the parties to a mining lease agree that it was intended as a lease at will, as admitted by their bill and answer, the lease must be so treated, and the institution of a suit by the lessor determines the lease. Oglesby v. Hughes, 96 Va. 115, 30 S. E. Rep. 439.
Same — Executory Lease. — An executory gas and oil lease, which' provides for its'surrender at any time without payment of rent or fulfillment of any of its covenants on the part of the lessee, creates a mere right of entry at will, which may be determined at any time by the lessor before it is executed by the lessee. Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va. 84, 34 S. E. Rep. 923.
Both Parties May Terminate Lease. — It is well settled that a lease, which is at the will of one of the parties, is equally at the will of the other. One is no more and no further bound than the other. The lessee and lessor both have the right to terminate the tenancy at will. Cowan v. Radford Iron Co., 83 Va. 547, 3 S. E. Rep. 120; Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va. 84, 34 S. E. Rep. 923.
Possession of a Mortgagor or Assignee. — The possession of a mortgagor or his assignee is not adverse to the mortgagee, and they are tenants at will, unless the assignee takes a conveyance without notice. Newman v. Chapman, 2 Rand. 93, 14 Am. Dec. 766. See monographic note on “Mortgages" appended to Forkner v. Stuart, 6 Gratt. 197.
Possession of Grantor in Trust Deed. — The possession of a grantor in a deed of trust, after the execution of the deed, is not adverse to the title of the trustee, but he holds as his tenant at will or sufferance, and he can be ejected without notice; or the trust subject may be conveyed to a purchaser, whose tenant at will or sufferance the grantor then becomes, by whom he may also he ejected without notice. Creigh v. Henson, 10 Gratt. 231. See mono-graphic note on “Deeds of Trust.”
Right of Landlord to Peaceably Enter — Trespass.—In a tenancy at will a landlord is entitled to peaceably enter upon the premises, but this will not justify an illegal search for stolen goods. Such acts make him a trespasser ab initio. Faulkner v. Alderson, Gilm. 221.
2. YEAR TO YEAR.
Holding Over — Receipt of Rent — Inference.—Where a tenant holds over after the expiration of his lease, and the lessor receives rent accruing subsequently to the expiration of the term, or does any act, from which it may be inferred that he intends to recognize Mm still as tenant, he becomes thereby a tenant from year to year upon the conditions of the original lease. Allen v. Bartlett, 20 W. Va. 46; Emerick v. Tavener, 9 Gratt. 220, 58 Am. Dec. 217; Williamson v. Paxton, 18 Gratt. 475. Otherwise, he is merely a tenant at sufferance, not entitled to notice to quit. Emerick v. Tavener, 9 Gratt. 220.
Same — Absence of New Agreement — Presumption.— Where a landlord allows a tenant for a term of years to hold over after the expiration of his term, without any new agreement, he becomes a tenant from year to year, and the law presumes the holding to be upon the terms of the former lease so far as they are applicable to tbe new situation. Peirce v. Grice, 92 Va. 763, 24 S. E. Rep. 392; King v. Wilson, 98 Va. 259, 35 S. E. Rep. 727; Voss v. King, 38 W. Va. 607, 18 S. E. Rep. 762.
But the presumption of law that a tenant holding over with his landlord’s permission is a tenant from year to year may be repelled by proof that he holds over in some other character, or for some other purpose. Williamson v. Paxton, 18 Gratt. 475.
Same — Option of Landlord. — A tenant for years, who holds over after the expiration of his term, without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord. Voss v. King, 38 W. Va. 607, 18 S. E. Rep. 762.
Extinguished by New Contract. — A tenant from year to year, who has been paying an annual ground rent of six dollars, which was worth much more, and who had built a meat shop on the land, under an agreement that he might remove all buildings erected by himself, executed the following instrument: “On or before the first day of January 1889,1 promise to pay to” the lessor “the sum of twenty-five dollars, for rent of beef shop on Main street from Jan. 1, 1888, to Jan. 1. 1889. Given under my hand this 17th day of May, 1888.” This instrument established such a new contract as would extinguish the tenancy from year to year. Edwards v. Hale, 37 W. Va. 193, 16 S. E. Rep. 487.
Sale by Trustee — Stipulations as to Purchaser’s Possession — Rent.—The trustee for a married woman, with power to sell, sells land by contract, which provides for the payment in cash of a certain sum, and if the purchaser fail by a certain day to do a certain act, that he shall hold the land for a year, and the cash payment shall be tbe rent for that year. The purchaser fails to do the act, holds as tenant for the year, and then holds over. This does not constitute him a tenant from year to year, and so entitle him to notice to quit; and neither does the paymentof rentfor the second year have that effect. Williamson v. Paxton, 18 Gratt. 475,
Stipulation to Give Tenant Preference Each Year.— The agreement for the renewal of a lease provides that the tenant is to get the house, at the price stated therein, for one year after his present year expires, and is to have the preference each succeed *729 ing year thereafter. It was held that this did not create a tenancy from year to year, so as to entitle the tenant to the legal notice to crnit. Crawford v. Morris, 5 Gratt. 90.
3. j^orljee.
Rights-Open Mines.- A tenant for life, unless restrained by covenant or agreement, has a right to the full enjoyment and use of the land and all its profits duringhis estate therein, including mines of oil or gas open when his estate began, or lawfully opened and worked during the existence of such estate. Koen v. Bartlett, 41 W. Va. 559. 23 S. E. Rep. 664. But he cannot open new ones. Williamson v. Jones. 48 W. Va. 562, 27 S. E. Rep. 411.
Liability to Account — A tenant for life in sole possession claiming exclusive ownership, taking petroleum oil, and converting it to his exclusive use, is liable to account on the basis of rents and profits, not for annual rental. Williamson v. Jones, 48 W. Va. 562, 27 S. E. Rep. 411.
Liable for Waste. — it is waste in a tenant for life to take petroleum oil from land, for which he is liable to the reversioner or remainderman in fee. Williamson v. Jones. 48 W. Va. 562. 27 S. E. Rep. 411.
Same — Jurisdiction.—A remainderman or rever-sioner has jurisdiction in equity against a tenant for life to enjoin waste, and lo have compensation for the damages, the same as if sued at law, to avoid multiplicity of suits. Williamson v. Jones, 43 W. Va. 562, 27 S. E. Rep. 411.
Same — Right to Proceed. — A tenant for life, who by waste has severed from the realty petroleum oil. which is a part of it, has no right to have the proceeds invested so that he may have interest therein during the life estate, but the proceeds go at once to the owner of the next vested estate of inheritance. Williamson v. Jones, 43 W. Va. 562, 27 S. E. Rep. 411.
Realty Going to Loss — Protection in Equity. — Where there is a life tenant, and Umber or other things which is part of the realty going to loss, and imperative need calls for it, equity may cause it to be cut or otherwise be secured for the remainderman or reversioner, it it do no harm to the life tenant, or he be compensated. Williamson v. Jones, 43 W. Va. 562. 27 S. E. Rep. 411.
Oil under Tract -Sale — Royally.—The petroleum oil underlying a tract of land which has been devised to a life tenant who is in xjossession, and which is to go to certain infant children after the decease of the life tenant, may be sold upon the petition of the guardian of the infants under provisions of ch. 82 of the Code, or may be leased ; .and the life tenant will be entitled to the interest on the royalty during the continuance of the life estate, and then the residue or corpus of the realty will be paid to the remaindermen. Wilson v. Youst, 43 W. Va. 826, 28 S. E. Rep. 781.
4. JOINT TENANCIES AND TENANCIES IN COMMON. — vSee monographic note on “Joint Tenants and* Tenants in Common.'5
Joint Tenancy — Additional Lease by One — Presumption — In order to cure a defect in a joint lease, one of the lessees takes an additional lease in his own name. It will be presumed that he is acting for the benefit of all, and that the additional lease is merely a confirmation of the first lease. Weaver v. Akin, 48 W. Va. 456. 37 S. E. Rep. 600.
Same -Same — Notice of Adverse Claim. — Where one of several joint lessees takes an additional lease in his own name to cure a defect in the first lease, before he can deprive the other colessees of the benefits of the additional lease, he must show that after they had notice that he intended to hold adversely to them, they delayed for an unreasonable time in accepting the terms of the subsequent lease. Weaver v. Akin, 48 W. Va. 456, 37 S. E. Rep. 600.
Same — Same—Same—Dealings Must Be Pair. — if one of several joint owners of a lease, who has cured a defect in the lease by taking a subsequent lease in his own name, for eleven months by his actions leads the rest of the lessees to believe that he has no intention of asserting the second lease in avoidance of the first, but during this time the property is developed in common and mutually enjoyed, he cannot suddenly and without reasonable, notice to them, claim exclusive ow-nership under the second lease. The dealings between them must be fair and open, and freé from all deception. Weaver v. Akin, 48 W. Va. 456, 37 S. E. Rep. 600.
Tenancy in Common — Liability for Waste. — It is waste in a tenant in common to take petroleum oil from land, for which he is liable to his cotenants to the extent of their right in the land. Williamson v. Jones, 43 W. Va. 562, 27 S. E. Rep. 411. See further, monographic note on “Joint Tenants and Tenants in Common.”
III. LEASES.
1. REQUISITES AND VALIDITY.
Certainty in Description. — Lease is not void for uncertainty in description which described the premises as a tract adjoining a certain farm, and formerly occupied by a certain person, containing a specified number of acres. Emerick v. Tavener, 9 Gratt. 220.
Words of Present Demise — Future Lease Intended.—
An agreement to lease a house for a stated time, rental and purpose, concludes with the statement: “The above to be covered by a regular lease subject to approval by all parties.” This was held not a binding contract, as words of present demise, how ever strong, will not constitute a lease, if it can be clearly inferred from the writing that the parties had in mind a future lease. Boisseau v. Puller, 96 Va. 45. 30 S. E. Rep. 457.
Privilege of Additional Lease on Giving Notice,—
Where a lease is made for five years, with the privilege at the end of the term to extend the lease for an additional five years by giving six months’ notice, this does not constitute a present lease for ten years. James v. Kibler, 94 Va. 165, 26 S. 15. Rep. 417.
Joint Lease — Separate Tracts — Mine on One. — A husband, owning a tract of land containing 152 acres, and his wife, owning 35% acres, leased the whole as one tract of 187% acres for oil and gas purposes, and the rent was paid to both, and receipted for by them jointly, and the royalty was put aside to their joint credit. Although the well was bored upon the husband’s tract, this was held a joint lease of one tract of land. Harness v. Eastern Oil Co., 49 W. Va. 232, 38 S. E. Rep. 662.
Right to Use Wharf a Covenant. — In a lease of a lumber yard, and a wharf extending along the entire front of the yard and building adjoining, which stipulated that a third party should have control of the entire wharf, subject to the rights of the tenant. of the yard to use that part of the wharf along the lumber yard for his business, the provision in the lease of the warehouse relative to the wharf was not a demise of the wharf but a covenant. Tunis v. Grandy, 22 Gratt. 109.
Mining Lease — Privilege of Searching, Mining and Erecting Buildings. — where a grantor gives to the grantee the right and privilege of entering upon a tract of land for the purpose of searching for min- *730 erais and. of mining' to such an extent as he might desire, the lessee to have the right to erect and maintain sufficient buildings and machinery to work the mines, using the necessary timber and water for this purpose, the lessee agreeing to pay $25 a year if the minerals were not actually mined, •and to pay ten cents per ton for all ores mined and shipped during the time which the mine shall be worked, the agreement was termed therein a “lease” and was to last for ninety-nine years. This was held to constitute a lease and not a mere license which was revocable. Young v. Ellis, 91 Va. 297, 21 S. E. Rep. 480.
A conveyance of the right of searching and digging and working for gold, or other minerals upon the grantor’s land, which was to continue as long as the grantees deemed it worthy of searching for the minerals, was held to constitute an unassignable lease in Hodgson v. Perkins, 84 Va. 706, 5 S. E. Rep. 710.
Same — Right of Way for Profits of Mine. — Where a land owner by an agreement assigns to another all his rights to all mineral on his lands “to farm,” with the provision that the assignee shall have the right of way over the lands provided he pays to the land owner a certain per cent, of the profits he makes from mining, constitutes a mining lease, which is forfeited when the lessee fails to do the mining in a reasonable time. Shenandoah, etc., Co. v. Hise, 92 Va. 238, 23 S. E. Rep. 303.
Same — Executory—Covenants Not Binding — Right of Entry. — ‘An executory oil and gas lease, which does not bind the lessees to carry out its covenants, but reserves to them the right to defeat the same at any time, and relieve themselves from the payment of any consideration therefor, is invalid to create any estate other than the mere right of entry, which is subject to termination at the will of either party. Trees v. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. Rep. 933.
2. COVENANTS. — See monographic note on “Covenants” appended to Todd v. Summers, 2 Gratt. 167.
a. To Repair and Reave in Repair.
Specified Repairs Enumerated — Property Wholly Destroyed. —in a deed of lease, immediately after the covenant to keep the buildings in repair, and separated from it only by a semicolon, is the provision : “That it will replace, at its expense, all glass broken during its ten ancy; that any damage caused by the bursting of water pipes, from failure to turn off water in cold weather, will be repaired at the expense of the lessee ; that it will leave the property in good repair.” This provision was construed to apply merely to the repairs enumerated, and not to a destruction of the property. Richmond Ice Co. v. Crystal Ice Co., 99 Va. 239, 37.S. E. Rep. 851.
Damage by Unavoidable Accidents Excepted. — A written lease of a building provided that the lessee should keep the same in repair except as to “unavoidable accidents, and natural wear and tear.” Held, in an action of assumpsit by the lessee against the lessor to recover for the failure of the latter to repair damages caused by unavoidable accident, that, there being no express covenant that the lessor would make such repairs, the lessee could not recover. Kline v. McLain, 33 W. Va. 32, 10 S. E. Rep. 11, 5 L. R. A. 400.
When a written lease of property provides that the lessee shall keep the same in repair, except as to unavoidable accidents and natural wear and tear, the law will not imply a contract on the part of the lessor to repair damages caused by unavoidable accidents. Clifton v. Montague, 40 W. Va. 207, 21 S. E. Rep. 858, 52 Am. St. Rep. 872, 33 L. R. A. 449.
Mill Destroyed by Movement of Ice, — Where a lessee of a mill covenanted to leave it in repair, and it was carried away by a sudden and unexpected movement of ice, it was held that he was bound to pay the rents, and perform the covenants. Ross v. Overton, 3 Call 309.
Mill Destroyed by Accidental Fire. — A lot was leased for fQur years with the agreement to return it to the plaintiff with all of its appurtenances. At the time of the lease a gristmill and carding machine were on the premises, and were destroyed by fire from some unknown origin during the term. It was held that the contract was not binding on the tenant to rebuild. Maggort v. Hansbarger, 8 Leigh 532.
Agreement to flake Repairs — No Time Specified.— Where the premises are out of repair at the time of the lease, and the tenant agrees to make certain repairs, without specifying when they are to be made, the tenant has until the end of the lease to make them, unless there is something in the nature of the repairs requiring them to be made sooner. Colhoun v. Wilson, 27 Gratt. 639.
Repairs to Fences. — in the absence of any special covenant requiring the landlord to maintain the fences on leased land, it is incumbent on the tenant to keep the said fences in repair. Hoyleman v. Kanawha, etc., R. Co., 33 W. Va. 489, 10 S. E. Rep. 816.
Statutory flodification. — The rigorous construction put upon covenants to repair at common law has been modified by statutes in Virginia and West Virginia. See § 2455, Va. Code, and § 22, ch. 72, W. Va. Code,* also, monographic note on “Covenants” appended to Todd v. Summers, 2 Gratt. 167, where the subject of covenants is fully treated.
b. For Quiet Enjoyment.
Not Implied from Words of Lease. — Where the defendant by an indenture rented and leased to the plaintiff a tract of land, to have and hold the same so long as she should live, and the defendant entered on the possession of the plaintiff, expelled and removed him, in an action of covenant thereon, it was held on a general demurrer no covenant for quiet enjoyment was implied fromthewords “rent” and “lease.” Black v. Gilmore, 9 Leigh 446, 33 Am. Dec. 253.
In a conveyance of freehold estates words of lease do not amount to a covenant for quiet enjoyment. Black v. Gilmore, 9 Leigh 446, 33 Am. Dec. 253.
c. Oe Fitness oe Premises. — There is no implied covenant that demised premises are suitable or fit for the particular use for which they are intended by the tenant. Thus where a party in a written lease describes the property as “the premises known as the ‘Bedford Salt Furnace Property,’ together with all six salt wells, tools and fixtures of the same,” there is no implied covenant on the part of the lessor that there are on said premises six salt wells of any particular productive capacity, or suitable for the purposes for which they are leased. Clifton v. Montague, 40 W. Va. 207, 21 S. E. Rep. 858, 52 Am. St. Rep. 872, 33 L. R. A. 449.
3. CONSTRUCTION.
Agreement to Pay Taxes and Dues — Assessment for Street. — A tenant agreed to pay, in addition to the rent, “all taxes and other public dues in any manner accruing.” Assessments for paving the street *731 in front of the property was held not to he included in the covenants of the lease, and when the lessee had paid such assessments he was entitled to recover the amount so paid of his landlord. Bolling v. Stokes, 2 Leigh 178, 21 Am. Dec. 606.
Lease of Railroad-Implied Agreement to Operate.— A branch railroad was built with the aid of county subscriptions for the purpose of giving the county seat railroad connections and conveniences. The road was leased, the lessor agreed to furnish the rolling stock, and the lessee agreed to pay from the annual receipts derived from the operation of the road, the running expenses, the annual rental, the dividends to the stockholders, and to return the line at the expiration of the lease in as good repair as it was when it was received. Although there was no express covenant requiring the operation of the road, the obligation of the lessee to do so for the term of the lease is a necessary implication. Southern Railway Co. v. Franklin, etc., Ry. Co., 96 Va. 693, 32 S. E. Rep. 485.
Failure to Pay Rent an “Abandonment”- -Option of Lessor. — The provision in a lease that the failure to pay the rental within a certain time shall be considered as an “abandonment,” makes the lease void at the option of the lessor on such failure, only when the covenant was intended for his benefit, and he avails himself of the privilege. Bowyer v. Seymour, 13 W. Va. 12.
Mining Lease — Royalty.—A tract of land is leased for the purpose of mining coal thereon, and is assigned. The lessors reserved as royalty ten cents for every ton passing over a certain screen, and five cents a ton for every ton passing through the screen. The lease also provides that the minimum rental should be $3,009 regardless of the amount of coal mined. A distress warrant being sworn out, and a receiver appointed, the works were closed, with five months' rental unpaid, for which the royalty on the coal actually mined amounted to $500 for the five months, which was decreed to be paid to the lessors. It was held on appeal that the lessors were entitled to five-twelfths of $3,000, which should have been decreed to them for unpaid royalty. Coaldale, etc., Co. v. Clark, 43 W. Va. 84, 27 S. E. Rep. 294.
Same — Same—Rights of Life Tenants and Owners of Fee. — An owner in fee simple makes an oil and gas lease for a term of five years, and as much longer as the premises are operated for oil and gas, or the rent for failure to commence operating is paid, for, among other things, one-eighth part of all oil produced and saved, to be delivered in the pipe lines to the credit of the lessor. The lessor then sells and conveys one undivided moiety or the one-sixteenth part of all the oil produced and saved. Afterwards, but before any oil is bored for or produced, the lessor sells, grants, and conveys the land in fee simple to his six children, to each one a part, by m,etes and bounds, in consideration of natural love and affection, by deed of general warranty, “except that the party of the second part takes the same subject to any lease for oil or gas made by the party of the first part or any sale of royalty for oil or gas made by him;” and. by the same deed, he retains full control of said land in all respects, and for all purposes, during his lifetime. Soon thereafter oil wells are bored, and oil produced, saved, and put in the pipe lines in large quantities. Held, that one-eighth royalty goes of right to the tenant for life and his grantees, during tbe continuance of the estate for life, and not to the owners in fee of the estate expectant thereon. Koen v. Bartlett, 41 W. Va. 559, 23 S. E. Rep. 664.
Same — Same—Reservation in Grantor. — Land was conveyed in fee, but the grantors reserved to themselves as royalty, one-sixteenth of all oil and petroleum underlying the tract. The grantee leased the exclusive right to drill for oil and gas, reserving one-eighth of all petroleum obtained from the premises. The lease was construed to reserve to-the lessor one-eighth of the oi] vested in the lessor, and was exclusive of the one-sixteenth, which was outstanding in the original grantor. Harris v. Cobb, 49 W. Va. 350, 38 S. E. Rep. 559.
Same — Same—Perpetuation of Lease. — A lease of land for oil and gas purposes contains the following provision : “Term of lease two years, and as much longer as oil or gas is found in paying quantities. If gas only is found, second party agrees to pay $25(1 each year, quarterly in advance, for the product of each well while the same is being used off the premises.” This was construed tornean that the production in paying quantities of either oil or gas, and the payment of the rent or royalty as agreed upon, would perpetuate the lease during the time of such production. Harness v. Eastern Oil Co., 49 W. Va. 232, 38 S. E. Rep. 662.
Same — Same—Agreement to Mine Certain Average of Ten Years — Termination.—The mining rights in a tract of land was leased for ten years, the lessees agreeing to pay twenty-five cents a ton for all ore mined, and to remove not less than an average of 12,000 tons per year. They paid according to agreement $3000 in advance, which was to be reimbursed by the royalties on the first 12,000 tons mined. This was construed to require an average of 12,000 a year, and not that such amount should be mined each year, and where the lessor had ended the lease at will in sixteen months after its commencement, the lessee could recover whatever amount the advancement exceeded the royalties. Oglesby v. Hughes, 96 Va. 115, 30 S. E. Rep. 439.
Same — Sale—Interest of Parties. — An oil lease investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors a certain per cent, thereof, is in legal effect, a sale of a portion of land, and the proceeds represent the respective interests of the lessors in the premises. Wilson v. Youst, 43 W. Va. 826, 28 S. E. Rep. 781.
Same — Conditional.—An oil lease for oil and gas purposes is a conveyance or sale of an interest in land, conditional and contingent on the discovery and reduction to possession of the oil or gas. Lawson v. Kirchner, 50 W. Va. 344, 40 S. E. Rep. 344.
Same — Right of Exploration. — A lease for the purpose of operating for oil and gas for the period of five years, and so much longer as oil or gas is found in paying quantities, on no other consideration than prospective oil royalty and gas rental, vests no present title in the lessee except the mere right of exploration; but the title thereto, both as to the period of five years and the time thereafter, remains inchoate and contingent on the finding, under the explorations provided for in such lease, oil and gas in paying quantities. And the completion of a nonproductive well, though at great expense, vests no title in the lessee. Because such lease must be construed as a whole, and, if there is no provision therein contained requiring the boring of another well after the first unsuccessful attempt is completed and abandoned, the lease becomes invalid, *732 and of no ‘binding’ force as to any of its provisions. Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. Rep. 978.
Mortgagee of Term — Liability on Covenants. — A mortgagee of a term of years, though he never enters into possession, is bound to perform the covenants of the lease from the date of the mortgage, like any other purchaser. Farmers Bank v. Mutual Assur. Soc., 4 Leigh 69.
Option to Renew on Conditions — Holding Over— Amount of Rent. — Land was leased for a period of ten years, with an option for an additional period, ¡provided the lessee should build thereon a storeroom of a certain value, but if the lease was not 'continued after the expiration of the first term, then the lessor should pay the lessee the full value •of the building. After the expiration of the second term the lessee continued in possession without any •additional agreement. In an action for the use of the building the lessee was held only chargeable for the amount of annual rent as fixed by the original agreement which hadbeenpaid, and verdict was for defendant. Peirce v. Grice, 92 Va. 763, 24 S. 33. Rep. 392.
Lease for Oil Purposes Only — Tenant Not Accountable for Gas from Same Wells. — A landlord leased to his tenant certain premises for the purpose of mining and taking carbon oil therefrom at a fixed royalty and for no other purpose; the tenant opened a well which produced both oil and hydro-carbon gas, the former in small quantities pumped from the well for which the royalty is paid, and the latter in large quantities, issuing by its own force from the well, and which is separated from the oil by the tenant, and by means of pipes conducted beyond the leased premises where it is either sold or appropriated by the tenant for his own use without accounting to the landlord therefor. In a suit brought by the landlord for an account and the value of said gas, held, the tenant is not accountable to the landlord for said gas or its value. Wood County Petroleum Co. v. W. Va. Transportation Co., 28 W. Va. 210.
IV. TERMINATION OF LEASE.
1. AGREEMENT.
Renders Notice Unnecessary. — Where a lease provides that for nonpayment of rent it shall be forfeited and surrendered in ten days’notice, and the lessor demands rent in arrear, and the lessee does not demand notice and pay, but agrees to end the term and surrender his lease, though he has no other notice, the tenancy is thereby ended, and the lessor becomes entitled to possession. Clator v. Otto, 38 W. Va. 89, 18 S. E. Rep. 378.
Agreement to Surrender Possession on Sale — Assignment. — Land was leased for a term of ten years for the annual rental of $150, with the proviso that if the lessor should sell during the lease the lessee should give possession at the end of the current year. The lessee assigned the lease with the same provision, and the assignee also reassigned, but reserving an -annual rent of $200, with the understanding that if the original lessor should sell during the lease, then the latter contract should expire. It was held that in accordance with the original covenant between the lessor and lessee, the sale of the premises alone would not determine the lease without surrender by the lessee, which was accepted by the lessor, or at least, without demand of surrender. Dudley v. Estill, 6 Leigh 562.
2. ATTORNMENT.--A tenant cannot destroy the possession of his landlord by a secret attornment * to another, and such an attornment as against the landlord is of no effect. Voss v. King, 33 W. Va. 236, 10 S. E. Rep. 402.1
3. CANCELLATION.
Option to Cancel. — The lessors of a lease were held entitled to cancel it, when its condition, that it should be void at their option, if certain condemnation proceedings by a railroad were not commenced by a certain day, was not complied with. Laurel, etc., Co. v. Browning, 99 Va. 528, 39 S. E. Rep. 156.
Fraudulent Procurement — Facts—Promises.—Where a lease was procured by means of fraudulent representations of material facts, which were peculiarly within the knowledge of the lessees, with the result that undue advantage was taken of the owners, this constitutes sufficient grounds for cancelling the lease. Rorer Iron Co. v. Trout, 83 Va. 397, 2 S. E. Rep. 713, 5 Am. St. Rep. 285.
False promises by lessees by means of which they were enabled to secure the lease, are not sufficient grounds for setting aside the lease for fraud, as in order to rescind a contract such representation must be made in regard to existing facts. Love v. Teter, 24 W. Va. 74t.
Work Abandoned for Seven Years. — Where a lease is made for the purpose of drilling and operating for oil and gas for a term of years, or as long as oil or gas is found in paying quantities, with a provision that the work should be commenced by a certain date, and nothing is done under the lease for seven years after said date, the lessee is presumed to have abandoned the lease, and it is proper for equity to cancel the lease and quiet the title to the land. Crawford v. Ritchey, 43 W. Va. 252, 27 S. E. Rep. 220.
Subsequent Lease Subject to First — Cancellation by Histake. — Where the lessor of property makes a subsequent lease of the same property with the in-dorsement that the second lease is taken subject to the first lease, the latter by mistake having been handed back to the lessor to be cancelled, such in-dorsement saves to the first lessee his right, if any, to have the mistake corrected. Schaupp v. Hukill, 34 W. Va. 375, 12 S. E. Rep. 501.
4. DEATH OF LESSOR. — An executory oil and gas lease, which is not binding upon the lessees to carry out its covenants, but is optional with either party to defeat the same at any time and relieve themselves from the payment of any consideration, is terminated by the death of the lessor. Trees V. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. Rep. 933.
5. FORFEITURE.
How Enforced. — Where a lease for years contains a clause of forfeiture for breach of its covenant to pay rent or other covenant, but no clause of reentry for such forfeiture, demand and re-entry is not the only mode by which the landlord may enforce the forfeiture. Guffey v. Hukill, 34 W. Va. 49, 11 S. E. Rep. 754.-
Forfeiture Must Be Unequivocally Claimed. — When a forfeiture for the benefit of the lessor is contracted for in case <?f default on the part of the lessee, before the lease can be regarded as at an end the lessor must, by word or deed, in some unequivocal way, manifest a purpose to treat the lease as forfeited. Thomas v. Hukill, 34 W. Va. 385, 12 S. E. Rep. 522.
Mere Refusal to Pay Rent. — A lease for a certain number of years in land, created by deed, will not be forfeited by a simple refusal to pay rent, or any mere words, where there is no open act of unmistakable hostility to the landlord’s title, with full notice from the tenant of his adverse title, or asser *733 tion of adverse title, and of his holding possession of the premises adversely to the landlord, when no condition or covenant of forfeiture is contained in the deed, especially when the term exceeds five years. Gale v. Oil, etc., Co., 6 W. Va. 200.
Performance of Covenants Prevented by “Act of God.” — -A lease for oil and gas purposes contained a covenant that the lessee should commence operations for a test well within one year from the date thereof, at some point in the district in which the leased premises were located, and complete such well in eighteen months after its commencement. Before the expiration of a year from the date of such lease the test well was located by surveying and leveling; the timbers afterwards used in constructing the derrick were cut down and hewn; a contract was made with a party for drilling the well; and the machinery was ordered to be hauled to the location, but neither the timber nor machinery was hauled to the location within the year, by reason of the impassable condition of the roads. The well was, however, completed in less than eighteen months after the date of the lease. Held, that the lease was not forfeited on the ground that operations were not commenced within a year from the date thereof. Fleming Oil & Gas Co. v. South Penn Oil Co., 87 W. Va. 645, 17 S. E. Rep. 203.
Effect of Second Lease. — Where the lessor of land gives a subsequent lease of the same property to another person, on which was endorsed before execution that it was taken subject to the prior lease, it was held that the second lease was not an unequivocal declaration of forfeiture of the first. Schaupp V. Hukill, 31 w. Va. 375, 12 S. M. Rep. 501.
In Thomas v. Hukill, 34 W. Va. 385, 12 S. 33. Rep. 522, where two leases had been made of the same property, it was held that the execution of the second lease could not be taken as conclusive evidence of a purpose to declare the first one forfeited when by its own terms it shows such not to be the purpose. And if silent on the subject it could be shown that the lessor executed and delivered the new lease on condition that it was to be given back if the first lessee objected, if the obligee knew of the condition. See Stuart v. Livesay, 4 W. Va. 45; Newlin v. Beard, 6 W. Va. 110; Ward v. Churn, 18 Gratt. 812.
A lease for drilling for petroleum oil and gas contained covenants as to the commencement of operations, with the provision that a failure to comply would work a forfeiture of .the lease. There was no covenant for re-entry. The covenants were broken, and the lessor leased to another person. The first lease was avoided, and the second was good against it, as the execution of the second lease was a sufficient declaration of forfeiture without demand and re-entry. Guffey v. Hukill, 34 W. Va. 49, 11 S. E. Rep. 754.
Incorporation of Forfeiture Clause by Indorsement.— A mere indorsement on a lease that it is taken subject to another lease does not incorporate in the former lease a forfeiture provision contained in the latter lease. Schaupp v. Hukill, 34 W. Va. 375, 12 S. E. Rep. 501.
Equitable Relief from Penalty. — if, in case of a lease with forfeiture clause for nonpayment of rent, the lessor by his conduct clearly indicates that payment will not be demanded when due, and thus lulls the lessee into a feeling of security and throws him off his guard, and because of this he does not make payments when due, the landlord cannot, without demand or notice, declare a forfeiture, and there is no forfeiture which equity would recognize, l and if there is in such case technically a forfeiture at law, equity would relieve against it. Hukill v. Myers, 36 W. Va. 639, 15 S. E. Rep. 151.
The forfeiture clause in a gas and oil lease, under which a valuable estate vested in the lessee in so far as the rentals are concerned, made payable in gas, oil and money, is in the nature of a penalty tO' secure such rentals, against which a court of equity will grant relief, when compensation for such rentals can be made, and great loss wholly disproportionate to the injury occasioned by the breach of the contract would otherwise result to the lessee negligently, but not fraudulently in default. South, etc., Co. v. Edgell, 48 W. Va. 348, 37 S. E. Rep. 596.
Specific Performance — The purchaser of an agreement for a lease and those under whom he claims, having committed such acts as would have amounted io a forfeiture had a lease been actually executed with such covenants as were usually inserted in leases to other tenants of the same estate, shall not have the aid of a court of equity to enforce specific performance against a judgment at law recovered by a purchaser of the fee-simple estate. Jones v. Roberts, 3 H. & M. 436.
Waiver — Acceptance of Rent. — Acceptance by the landlord of rent accruing after breach of a condition ‘contained in the lease, with full knowledge of the breach and all of the circumstances, is a waiver of the right to declare a forfeiture and reenter upon the premises. Hukill v. Myers, 36 W. Va. 639, 15 S. E. Rep. 151 ; Allen v. Bartlett, 20 W. Va. 54; McKildoe v. Darracott, 13 Gratt. 278.
Same--'Quo Animo. — The acceptance of rent after a forfeiture of a lease will be regarded as a waiver of the forfeiture or not, according to the quo animo ; with which it is received. Jones v. Roberts, 3 H. & M. 436.
Same-Consent of Lessors to Assignment. — A lease of mining lands assigned, and payment was made in part by note. In an action on this note the defendants claimed that the lease had been forfeited previous to the assignment, but the evidence showed that the lessors had acquiesced in the assignment, and had waived the forfeiture by not declaring the lease forfeited until some time after the defendants had been in possession, and had violated the terms of the lease. Judgment in lower court for plaintiff was affirmed. Deaton v. Taylor, 90 Va. 219, 17 S. E. Rep. 944.
Same — Indulgence by Lessor. — Where in an oil lease there is a clause of forfeiture for nonpayment of rental, but the lessor consents that it need not be paid at the times when due, and indulges the lessee, and acquiesces in his failure to pay, there is no forfeiture for nonpayment Hukill v. Myers, 36 W. Va. 639, 15 S. E. Rep. 151.
Same — No Waiver after Subsequent Lease. — Waiver of forfeiture oi a lease for nonpayment of rent cannot be made by the lessor after he has granted a lease of the same premises to another lessee. Guffey v. Hukill, 34 W. Va. 49, 11 S. E. Rep. 754.
A subletting is not a continuing act of forfeiture, and if the forfeiture is once waived it cannot after-wards be retracted. McKildoe v. Darracott, IS Gratt. 278.
Same — -No Revival after Waiver. — A forfeiture, if not by a continuing act, such as a neglect to repair, once waived, cannot be revived. McKildoe v. Dar-racott, 13 Gratt. 278.
Performance of Condition before Petition. — if land be forfeited for nonpayment of quit rents or want *734 ■of cultivation, still if the condition he performed before the land is petitioned for, the title is saved. Wilcox v. Calloway, 1 Wash. 38.
6. NEW LEASE.
Amounts to Surrender. — If a lessee for life or years fate a new lease of the reversioner for a longer or shorter term than before, it is a surrender of the first lease. Wade v. South Penn Oil Co., 45 W. Va. 380, 32 S. E. Rep. 169 ; Edwards v. Hale, 37 W. Va. 193, 16 S. E. Rep. 487.
The execution of a new lease to other lessees, and possession thereunder, render a prior executory lease at will invalid. Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va. 84, 34 S. E. Rep. 923.
7. NOTICE OP ADVERSE CLAIM.
Relation Ceases on Notice. — As a general rule a tenant is not permitted to question his landlord’s title; yet from the time that the landlord has notice that the person, who formerly held as tenant, claims to be in possession, not as tenant, but in his own right, the relation of landlord and tenant ceases. Campbell v. Petterman, 20 W. Va. 398; Emerick v. Tavener, 9 Gratt. 220 ; Alderson v. Miller, 15 Gratt. 279.
Same — Surrender of Possession. — It is settled law in Virginia that a tenant may dissever the relation of landlord and tenant without first surrendering the possession of the premises, but in order to hold adversely he must make a clear, positive and continued disclaimer and disavowal of the title of his landlord, who must be put on notice of the adverse claim before a foundation can be laid for the operation of the statute of limitations against him. Neff v. Ryman (1902), 8 Va. Law Reg. 497; Erskine v. North, 14 Gratt. 60, 66 ; Creekmur v. Creekmur, 75 Va. 430.
Secret Lease or Conveyance. — If a tenant takes a secret lease or conveyance for the land from a third party, claiming to be the owner, without the knowledge of his landlord, the character of his possession will not be changed. Voss v. King, 33 W. Va. 236, 10 S. E. Rep. 402.
Refusal to Pay Rent — Condition in Deed. — An estate for a fixed number of years created by deed will not be forfeited by a simple refusal to pay rent, or any mere words, where there is no open act of unmistakable hostility to the landlord’s title, his grantees or assignees, with full notice from the tenant of his adverse title, or assertion of adverse title, and of his holding possession of the premises adversely to the landlord, his grantees or assignees, when no condition or covenant of forfeiture is contained in the deed of lease, especially when the term exceeds five years. Gale v. Oil, etc., Co., 6 W. Va. 200.
8. NOTICE TO QUIT.
Tenant at Will or by Sufferance Not Entitled. — An agreement under seal by a tenant that he would surrender possession whenever a purchaser from the landlord required it, constituted him a tenant at will or at sufferance, and he was not entitled to six months’ notice to quit. Harrison v. Middleton, 11 Gratt. 527.
Unnecessary Where Formal Disclaimer Made, — Notice to quit is unnecessary where formal disclaimer has been made by a tenant holding over, before bringing an action against him for unlawful de-tainer. Emerick v. Tavener, 9 Gratt. 220.
Tenant Claiming to Hold Adversely. — If a tenant claims to hold adversely to his landlord, he is not entitled to notice to quit. Harrison v. Middleton, 11 Gratt. 527.
Purchaser from Tenant Who Had Notice or Made Disclaimer. — Purchaser in fee under tenant is not entitled to notice to quit before the lessor can maintain an action for unlawful detainer against him and the tenant jointly, where the tenant has received notice to quit or has made a formal disclaimer. Emerick v. Tavener, 9 Gratt. 220.
Provision That Lease Shall Cease When Lessee Ceases to Work. — Where a lease provides that the same shall terminate and cease whenever the lessee, from any cause, ceases to work for the lessor, and it appears that the lessee had ceased to work for the lessor before the action was commenced, said lessee is not entitled to notice to quit. Marmet Co. v. Archibald, 37 W. Va. 778, 17 S. E. Rep. 299.
What Is Proper Notice. — Where a lease contained a stipulation that if the lessor should sell the demised premises during the term, upon proper notice the lessee should surrender possession, it was held that any notice that distinctly informed the tenant that a sale had been made would be a "proper notice.” Neither the law nor the contract required any particular form or length of notice. Millan v. Kephart, 18 Gratt. 1.
Tenancy from Year to Year. — Where a tenancy from year to year has been created, notice to quit must be given by the party wishing to terminate the lease. The period of such notice depends on statutory provisions. Allen v. Bartlett, 20 W. Va. 46. See supra, “II. Kinds of Tenancies," subsection “2. Year to Year.”
Five Days’ Notice — Tender of Rent — Demand—Unlawful Detainer. — Premises were leased for a term of years, with a clause of re-entry for ten days’ default in paying any instalment of rent. Default was made and notice was given the tenant that unless he quit the premises in five days action of unlawful detainer would be instituted against him. The day • following the service of the notice the rent was tendered the lessor’s agent, who refused to accept it. It was held that as no demands had been made the action was not maintainable either at common law or under the statute. Code 1873, ch. 130, §4 (§2719, Code 1887); Johnston v. Hargrove, 81 Va. 118.
9. PURCHASE OP REVERSION.
Estoppel. — A purchase of the reversion in fee by a tenant for years ends the tenancy, and the tenant is not thereafter estopped from denying further continuing title or rent in the landlord. Wade V. South Penn Oil Co., 45 W. Va. 380, 32 S. E. Rep. 169.
Option in Lease. — Where there is a lease for years with rent, and an option to purchase the fee, an election to purchase under the option, and tender of purchase price under it, ends the lease and its rent. Wade v. South Penn Oil Co., 45 W. Va. 380, 32 S. E. Rep. 169.
Same — Not Inconsistent. — A lease yielding rent and an option to purchase the fee outright are not inconsistent, and the taking such lease during the term of the option will not abrogate or surrender it. Wade v. South Penn Oil Co., 45 W. Va. 380, 32 S. E. Rep. 169.
10. RE-ENTRY AND EVICTION.
Common-Law Rule — Demand before Re-entry. — It is an ancient rule of the common law, that before a lessor can exercise a stipulated right of re-entry for breach of covenant to pay rent, he must make an actual demand upon the tenant for payment thereof, unless by special agreement between the parties the requirement of demand has been dispensed with. Johnston v. Hargrove, 81 Va. 118.
How, When and Where Demand Made. — How, when *735 and where demand for rent in arrear must be made is well settled by the authorities. It must be for the precise sum due for the last instalment, on the day it is due, at some convenient hour before sunset, on the premises, at the most notorious place thereon, and if there be a dwelling-house, at the front door thereof. Johnston v. Hargrove, 81 Va. 118.
Failure to Make Re-entry — Ejectment.—If, on a tenant's failure to fulfill the covenant of payment, or to comply with the landlord’s demand therefor, made as prescribed by the common law, the landlord does not re-enter in fact, he may bring ejectment, under Code, ch. 93, sec. 16, and recover, subject to the provisions of sec. 17, as to the tenant’s being completely barred of all rights, etc., in 12 months. Bowyer v. Seymour, 33 W. Va. 12. See monographic note on “Ejectment” appended to Tapscott v. Cobbs, 11 Gratt. 172.
Possession under Contract of Purchase-Demand.— One who has taken possession of land under a parol contract of purchase from the owner cannot be elected at the suit of a grantee of the owner, where there has been no previous demand for possession, since he is tenant at will of the owner. Jones v. Temple. 87 Va. 210, 12 S. E. Rep. 404, 2d Am. St. Rep. 649.
Removal during Term. — The simple fact, that a tenant moves off the leased premises during his term, does not entitle his landlord to enter and put another tenant in possession ; and if the landlord does so enter during the terra, the first lessee may recover the premises from the second lessee by action of unlawful entry and detainer. Chancey v. Smith. 25 W. Va. 404, 52 Am. Rep. 217.
Abandonment —Demand— Option. — Where a lease provides that the failure to pay the rent within sixty days after it is due shall constitute an abandonment of the same, and the tenant fails to comply therewith, and the landlord demands payment at the time, place, and in the manner prescribed by common law, and the payment of the rent is not made in proper time, he is at his option to enter upon the premises, or such part thereof as can be entered upon by him. Bowyer v. Seymour, 13 W. Va. 12.
Demand — No Property Liable for Rent. — If a grant be made, reserving a yearly rent with a condition that the grantor may re-enter if the rent be not paid after demand made upon the premises, if no property is found on the land, whereof distress can be made ; the grantor, upon demand made, and failure to pay, no property to distrain being found on the land, may re-enter and grant over to another. Wartenby v. Moran, 3 Call 191.
Definition of Eviction. — The term eviction may be defined as not a mere trespass, but something of a grave and permanent character done by the landlord, with the intention of depriving the tenant of the enjoyment of the demised premises. Tunis v. Grandy, 22 Gratt. 109.
Surrender No Eviction. — In a suit against the lessor of premises, to which the tenant was not a party, a decree directing the sheriff to lease the demised premises, which was done, the tenant giving possession, his surrender was held not to amount to an eviction. Murray Caldwell & Co. v. Pennington, 3 Gratt. 91.
Sub-lease — Remainder Rented with Consent of Landlord — No Eviction —On October 3rd, 1792, land was leased for a term of five years, On Noy. 9th, 1795, the lessee demised the remainder of his term to M., who agreed with the landlord in May, 1797, that he might rent the remainder of his year to whomsoever he wished. Accordingly the landlord rented to G. for two years. In an action by the original lessee against G. it was held the lease to G. was not an eviction of the plaintiff, and did not prevent the landlord’s recovering a balance due for rent on the original contract. Cooke v. Wise, 3 H. & M. 463.
Recovery by Title Paramount — Discharge of Rent,— If leased land be recovered by a third person by title superior to that of the lessor, the tenant is discharged from the payment of rent after' the eviction by such recovery. Tunis v. Grandy, 22 Gratt. 109.
Wrongful Deprivation of Whole or Part of Premises Discharges Whole Rent. — if a lessor wrongfully deprives a tenant of the whole or any part of the premises. the tenant is discharged from the payment of the whole rent until such possession is restored. Tunis v. Grandy, 22 Gratt. 109. See section on “Rent.”
If the tenant be at any time deprived of leased premises by the agency of the landlord the obligation to pay the rent ceases. Tunis v. Grandy, 22 Gratt. 109.
Liability of Lessee — Warranty.—in the absence of an express warranty, a lessee is not liable for an eviction of his assignee of the lease under paramount title. McClenahan v. Gwynn, 3 Munf. 556.
Conveyance in Fee — Election.—Conveyance in fee by tenant is no disseisin of the lessor, except at the latter’s election. Emerick v. Tavener, 9 Gratt. 220.
Liability of Landlord-Original Lessee — Assignee.— If the landlord is liable in case of eviction under paramount title to the original lessee, he is equally liable in damages to the assignee. McClenahan v. Gwynn, 3 Munf. 556.
V. ASSIGNF1ENT OF LEASE.
Relation Attaches to A11 Succeeding to Possession.— It is an elementary principle, which has been repeatedly approved by the Virginia courts, that when the relation of landlord and tenant has been once established, it attaches to all who may succeed to the possession through or under the tenant, whether immediately or mediately; and the succeeding tenant is as much bound by the acts of his predecessor as if they were his own. Neff v. Ryman (1902), 8 Va. Law Reg. 497 ; Emerick v. Tavener, 9 Gratt. 224.
Where the lessee of a term for years holds over, creating a tenancy from year to year, and assigns his lease, the assignee holds subject to all the stipulations and conditions in the original lease. Allen v. Bartlett, 20 W. Va. 46.
An assignee of a lease is fixed with notice of its covenants, and takes the estate of the assignor cum onere, and each successive assignee of a lease, because of privity of estate is liable upon covenants maturing and broken while the title is held by him. W. Va., etc., R. Co. v. McIntire, 44 W. Va. 210, 28 S. E. Rep. 696.
Liability of Landlord to Assignee. — The landlord is liable to the assignee of a lease for damages whenever he would have been similarly liable to the lessee. McClenahan v. Gwynn, 3 Munf. 556.
Lease of Factory — Assignee Assumes Liabilities-Rights of Lessor. — A factory was leased for the annual rental of two-thirds of its product, with the stipulation that a certain quantity should be produced each year, the lessee agreeing to sell the lessor’s share. It was further agreed that the lease should not be sub-let or assigned without the written *736 permission of the lessor, who had the privilege of terminating it on two months’ notice. "Within a year the lease was assigned, and the lessor entered into a new agreement with the sub-lessee, the latter assuming all of the lessee’s liabilities. The sub-lessee paid off the debts of the lessee. For the failure of the lessee to manufacture the required amount the lessor was entitled to damages, but as the new lease was made ^yithin a year, the lessee’s covenant was not broken, and therefore the sub-lessee was only required to account to the lessor for two-thirds of the stock left by the lessee, after deducting all expenses atten ding the sale of what was sold. Pres-tons v. McCall, 7 Gratt. 121.
Assignees Holding Over — How Amount of Rent Determined. — Salt works held under a lease by court, which lease terminated January 1,1861, was assigned by the lessee in 1859 for a term of ten years, the assignees holding over from the termination of the lease in 1861, until the end of the assignment in 1869. It was held that, in determining the rent for which the assignees should be held liable, the court might require them to produce, before the commissioner ; selected to ascertain and report what would be a reasonable rent, all contracts in their possession or control by which leases of the property were made to them, or privileges granted to others to manufacture salt during the period of their lease, and all books and accounts and papers in their possession or control showing the quantity of salt manufactured during such period, and delivered to them by their sub-lessees, or those to whom such privileges were granted under the contract. Stuart v. White, 25 Gratt. 300.
VI. CROPS AND IMPROVEMENTS.
Crops — Fixed Term — Way-Going Crop — Common-Law Rule. — At common law where land is léased for a certain number of years, and consequently the period of the term is fixed and certain, and the lease is silent as to who shall be entitled to the growing crop on the land at the end of the term, the off-going tenant is not entitled to such way* going crop; but where the lease recognizes the right to sow in the last year of the term, and the tenant is restricted to the cultivation of certain portion of the land and pays an equal annual rental for its use, he has a right to reap the way-going crop, where the lease is silent as to who is entitled thereto. Kelley v. Todd, 1 W. Va. 197; Harris v. Carson, 7 Leigh 632.
Where a lease has a fixed period for its termination, and there is nothing in it purporting to give to the tenant the crops growing upon the land at the termination of the lease, the tenant has no right to reap those crops after his lease ends. Mason v. Moyers, 2 Rob. 606.
Where land is rented for a fixed and certain period, the way-going tenant is not entitled to the way-going crop. Harris v. Carson, 7 Leigh 632, 30 Am. Dec. 510.
Stipulation for Wheat Crop Harvested after Term Ends — Rights Thereto. — A lease for a term of years stipulated that the land should be sown with wheat and timothy the last autumn of the term, which terminated in the spring. At the end of the term the lessee vacated, and they were leased again to another lessee, who harvested the wheat. It was held that the first lessee was entitled to recover of the second lessee the value of the wheat. Kelley v. Todd, 1 W. Va. 197.
No Restriction as to Cultivation — Right to Plow Certain Field. — In a suit to enjoin the defendant from injurious cultivation of the land of his lessor, by plowing a certain river bottom set in blue grass in order to cultivate it in corn, it appeared that by the terms of the lease all the land was rented with no restrictions as to its cultivation, except that it was agreed that it should be farmed in such manner as to prevent injury to it, in so far as injury could be reasonably prevented; that the land had been in corn for twelve or fifteen times in the last thirty years; that it was good farming to plow this piece of land, as it never washed as other portions of the land did, but was the best corn land on the place, and was easily reset in blue grass. The injunction was dissolved. Hubble v. Cole, 85 Va. 87, 7 S. E. Rep. 242.
improvements — Removal.—Where the terms of a lease require the lessee to erect buildings upon the leased premises, and there is no agreement for their removal by the lessee, he has no right to remove them. Peirce v. Grice, 92 Va. 763, 24 S. E. Rep. 392.
“Renewable or Pay for Improvements.” — Where the language of a lease is that it is “renewable or pay for the improvements,” after a renewal of the lease, the lessee is not entitled to the value of the improvements. King v. Wilson, 98 Va. 259, 35 S. E. Rep. 727.
VII. ESTOPPEL OF TENANT.
1. GENERALLY.
To Attorn, — in a suit to sell land it was sold to the plaintiff who conveyed it, and the grantees put a tenant in possession. Upon appeal a reconveyance was ordered, the first sale being set aside, and the deed was executed. Thereupon the tenant attorned and afterwards gave possession to the original owner, to whom the reconveyance had been made. On ejectment the relation of the tenancy did not estop the tenant to attorn. Miller v. Williams, 15 Gratt. 213.
To Repel Claim for Rent. — if a tenant has occupied and enjoyed the use of land, he will be estopped in an action by the landlord for the rent to repel his claim on the ground that the lease was void. Watson v. Alexander, 1 Wash. 340. See section on “Rent,” infra.
To Acquire Rights at Tax Sale. — A tenant who is bound under the lease to pay the taxes on demised premises cannot by purchase at a tax sale acquire any rights against his lessor. Williamson v. Russell, 18 W. Va. 612.
To Claim Forfeiture. — A lease of coal lands to a company contains the condition that unless condemnation proceedings by a railroad company for a line to the land be commenced by a certain time, the lease shall be void at the option of the lessor. The owner of land sought to be condemned refuses to sell the right of way, and subsequently acquired the interest of some of the lessors. The condition being broken, it was held that he was not estopped from claiming a forfeiture of the lease. Laurel, etc., Co. v. Browning, 99 Va. 528, 39 S. E. Rep. 156.
To Deny Boundaries. — Tenant is estopped to deny boundaries of the demised premises as described in the lease, or that his possession is within them, in an action for unlawful detainer, where he has executed the lease acknowledging such description and possession. Emerick v. Tavener, 9 Gratt. 220.
To Deny Covenants in Lease. — Where a written lease describes the property as containing six salt wells, the recitals as to the number of wells included in the premises after the lease has been accepted and acted on for more than two years by the lessee, with ample opportunity of knowing, not only the *737 contents of the lease, but also the character and quality of the leased property, must be regarded as conclusive of the fact between the parties to the lease. Clifton v. Montague, 40 W. Va 207, 21 S. 35. Rep. 858.
To Deny Power of Lessor to Contract by Assumed Name.- Where an action of unlawful detainer is brought by a mining company in its proper corporate name against one of its tenants, although the lease was in ■writing*, and executed by the company in a name different from its true corporate name, assumed for its own convenience, the tenant accepting said lease, and occupying the premises, and paying rent thereunder is estopped from denying the power of the corporation to contract in its assumed name. Marmet Co. v. Archibald, 87 W. Va. 778, 17 S. E. Rep. 299.
Sub-tenants Bound by Acts of Predecessor, — When once the relation of landlord and tenant is established by the act of the parties, it attaches to all who may succeed to the possession through or under the tenant whether immediately or remotely, the succeeding tenant being as much bound by the acts and admissions of his predecessor, as if they were his own. Allen v. Bartlett 20 W. Va. 46.
2. TO DENY LANDLORD'S TITLE.
General Rule. — The general rule is firmly established that the possession of the tenant is the possession of the landlord, and is not adverse to him, and the tenant will not be allowed to deny his landlord’s title. Allen v. Paul, 21 Gratt. 232; Rakes v. Rustin Land, etc., Co.. 2 Va. Dec. 156; McClung v. Echols, 5 W. Va. 215; Gale v. Oil. etc., Co., 6 W. Va. 210; Campbell v. Fetterman, 20 W. Va. 412; McFarland v. Douglass, 11 W. Va. 652; Miller v. Williams, 15 Gratt. 218; Reusens v. Lawson, 91 Va. 258, 21 S. E. Rep. 347; Bushong v. Rector, 32 W. Va. 317, 9 S. E. Rep. 227; Dobson v. Culpepper, 23 Gratt. 352; Voss v. King 33 W. Va. 236, 10 S. E. Rep. 402; Voss V. King, 38 W. Va. 607, 18 S. E. Rep. 762; Bodkin v. Arnold, 45 W. Va. 90, 30 S. E. Rep. 154; Hodgkin v. M’Veigh, 86 Va. 751, 10 S. E. Rep. 1065; Hurst v. Dulany, 84 Va. 701. 5 S. E. Rep. 802; Emerick v. Tavener, 9 Gratt. 220; Locke v. Frasher, 79 Va. 409; Genin v. Ingersoll, 2 W. Va. 558; Creekmur v. Creekmur, 75 Va. 430; Suttle v. Richmond, etc., R. Co., 76 Va. 289.
It was held in Stuart v. Andrews, 1 Va. Dec. 449, which was an action of unlawful detainer to recover the possession of land which had been leased, that where the defendant had acknowledged the right of the plaintiff “by a solemn contract under his hand and seal, under which contract he came into the possession and enjoyment thereof, and obligated himself to return the same to the plaintiff at the expiration of the lease, by the law as established for ages, he is estopped to deny his title, and is bound by his solemn covenant to surrender to him the possession/’
Exception to Rule. — But, if a party is in possession of land under a claim of title, and is by fraud or mistake induced to believe that another has a better title to it, and thereby to take a lease from him, the tenant is not estopped by the lease from denying the landlord’s title and showing that he has a good title to the property. Alderson v. Miller, 15 Gratt. 279; Turpin v. Saunders, 32 Gratt. 33; Locke v. Frasher, 79 Va. 409; Gale v. Oil. etc., Co., 6 W. Va. 210; Tones v. Fox, 20 W. Va. 380; Voss v. King, 33 W. Va. 241, 10 S. E. Rep. 403. See also, Voss v. King, 38 W. Va. 607, 18 S. E. Rep. 762: Bodkin v. Arnold, 45 W. Va. 90, 30 S. E. Rep. 154.
Rule Applies Only When Controversy Is between Landlord and Tenant. — The rule that a tenant cannot deny the title of his landlord applies only in actions against the tenant for rent or possession, but does not render the tenant incompetent to deny such title in a controversy between other parties and the landlord, in which such tenant has no interest. Bartley v. McKinney, 28 Gratt. 750.
Rule Does Not Apply When Tenant Claims Life Estate, Which Landlord Has Acknowledged. — The rule that a tenant cannot set up against his landlord in ejectment an adversary title in a stranger, does not apply where the title set up by the tenant is a lease for life from the person under whom the plaintiff claimed to one under whom the tenant claimed, the validity of which the plaintiff had admitted by the regular annual receipt of the rents stipulated therein, from defendant and those under whom he claimed, down to a period of two month» before the institution of the suit. Smoot v. Marshall, 2 Leigh 134.
Rule Not Affected by Possession under Contract of Purchase at Time of Lease. — The operation of the general rule that the tenant cannot deny his landlord’s title is not affected by the fact that tenant is in actual xjossession. as under a contract of purchase, at the time he accepts the lease; that by such acceptance he as effectually recognizes the title and possession of the lessor as if he had entered and taken possession under and by virtue of the lease itself. Jordan v. Katz. 89 Va. 628, 16 S. E. Rep. 866: Locke v. Frasher, 79 Va. 409; Emerick v. Tavener, 9 Gratt. 220.
No Adverse Possession without Full Notice. — The relation of landlord and tenant is one carefully guarded by the law, and it will not allow one who has come into the possession of land under another to set up an adverse claim to it, without full notice of his disclaimer or assertation of adverse title. Emerick v. Tavener, 9 Gratt. 221, 237; Creekmur v. Creekmur, 75 Va. 430, 436; Reusens v. Lawson, 91 Va. 226, 21 S. E. Rep. 347. See next section, “3. Adverse Possession of Tenant,” infra.
Applies to Substituted Tenant. — Possession of land obtained from the tenant of another is merely the substitution of one tenant for another, and such substituted tenant cannot be heard to set up title or possession in himself adverse to that under which he entered. Genin v. Ingersoll, 2 W. Va. 558.
Estoppel Attaches to All Successors under Tenant.-Tenant’s estoppel to deny lessor’s title attaches to all successors who acquire possession through or under such tenant, either immediately or remoter. So where one acquires possession under an absolute conveyance in fee from the tenant, the rule applies. Emerick v. Tavener, 9 Gratt. 220.
Applies to One Living with Tenant and Helping Pay Rent. — One living with a tenant and helping to pay * the rent cannot acquire any rights to the demised land by adverse possession. Hodgkin v. McVeigh, 86 Va. 751, 10 S. E. Rep. 1065.
Tenant Estopped in All Actions. — in an action by a landlord against his tenant, whether the action be debt, assumpsit, covenant, or unlawful detainer, where neither fraud nor mistake is shown in the procurement of the lease, no proof of title is required by the landlord, for in such case the tenant is estopped from denying the title of his landlord. Voss v. King, 38 W. Va. 607, 18 S. E. Rep. 762.
Same — Direct or Collateral. — Tenant is estopped to impugn landlord’s title duringthe tenancy, or until he has restored possesssion, or done something equivalent thereto, either by proof of title in him *738 self or another, whether the question arises in a direct action to recover possession or in a collateral action. Emerick v. Tavener, 9 Gratt. 220.
Rule Not Applicable When Possession Surrendered or Recovered. — A tenant who surrenders possession at the end of his term, or from whom possession is recovered, is not prevented by the existence of such tenancy at one time, or by the deed of lease which he executed, from contesting' the title of his former landlord. Wild v. Serpell, 10 Gratt. 405.
Finding by Special Verdict. — where a special verdict finds that both the tenant of land, and one claiming possession of it claim an estate in fee simple under the same person, it is a finding of the seizin of the claimant, and the tenant is estopped to deny it. Creigh v. Henson, 10 Gratt. 231.
Absolute Deed — Mortgage—Rental—Injunction.—A lot is bought and a house is built thereon for one party, with money furnished by another, who takes the deed in his own name as security. Default being made in the monthly payment of money, which was agreed to be done until the debt was extinguished, by mutual consent the property was placed with a real estate agent who rented it to the purchaser. The parties subsequently had a disagreement as to the amount of rent, the grantee threatening to sue to recover the land, a suit was brought by the purchaser to enjoin the proceedings to recover the property. It was held that the bill should be dismissed as by the agreement under which the plaintiff became defendant’s tenant, the former waived all rights under the deed,’and was estopped to deny the defendant’s title. Jordan v. Katz, 89 Va. 628, 16 S. E. Rep. 866.
3. ADVERSE POSSESSION OF TENANT.
Notice of Disclaimer and Adverse Possession —A tenant cannot set up an adverse title against his landlord unless he first gives notice to the latter that he disclaims the relation and holds adversely. Voss v. King, 83 W. Va. 236, 10 S. E. Rep. 402; Allen v. Paul, 24 Gratt. 332; Genin v. Ingersoll, 2 W. Va. 558; Reu-sens v. Lawson, 91 Va. 226, 237, 21 S. E. Rep. 347; Hulvey V. Hulvey, 92 Va. 182, 23 S. E. Rep. 233; Emerick v. Tavener, 9 Gratt. 221; Creekmur v. Creekmur, 75 Va. 430.
As was said in the late case of Neff v. Ryman (1902), 8 Va. Law Reg. 497, quoting from Reusens v. Lawson, supra, “The relation of landlord and tenant is one carefully guarded by the law, and it will not allow one who has come into possession of land under another to set up an adverse claim to it, without full notice of his disclaimer or assertion of adverse title.
Deed Accepted from Other Than Landlord — Adverse Claim — Notice.—Thus if a tenant accept a' defed from another persori than his landlord, 'purporting to convey the land to him in fee, and later conveys it in fee to another, and he and his alienees claim the land in their own right under such conveyance, with the knowledge of the landlord, the possession by the tenant and his alienee is adverse. Swann v. Thayer, 36 W. Va. 46, 14 S. E. Rep. 423; Swann v. Young, 36 W. Va. 57, 14 S. E. Rep. 426.
Acceptance of Lease When in Possession — Termination — Surrender,—So a lessee in possession may accept a lease from one claiming to bé the owner, and after the termination of his term terminate his tenancy by disclaimer and notice to such person, and he will not in such case be required to surrender the possession before he will be allowed to set up an adverse title in himself or a third person. Voss v. King 33 W. Va. 236, 10 S. E. Rep. 402.
Restoration of Possession by Substituted Tenant.— And before a substituted tenant can set up adverse possession he must restore the possession acquired through the tenant of another and assert his claim, or give notice to the landlord or cotenant of his claim, or he must actually oust the tenant. Genin v. Ingersoll, 2 W. Va. 558.
Property Surrendered in Acquiring Rights Subsequent to Relation. — If a tenant acquires rights adverse to his landlord subsequent to the creation of the relation, he must surrender the property before he can assert such adverse rights. Emerick v. Tavener, 9 Gratt. 220.
Lessor "lust Have Notice. — Tenant’s possession does not become adverse by his holding over and disclaiming to hold under the lessor, and claiming the fee, unless full notice thereof is brought home to the lessor. Emerick v. Tavener, 9 Gratt. 220.
Evidence Required. — In order to make a tenant’s possession adverse to his landlord, the notice of such adverse holding need not be shown by evidence so convincing as to preclude all doubt. Reusens v. Lawson, 91 Va. 226, 21 S. E Rep. 347.
Person Living with Tenant and Helping Pay Rent.— A person who lives with a tenant and helps to pay the rent cannot acquire an adverse possession against the landlord while such condition exists. Hodgkin v. McVeigh, 86 Va. 751, 10 S. E. Rep. 1065.
Church Trustees Holding Property. — Church trustees holding property placed trustees of another church in possession thereof, and the latter acknowledged the former’s title. The latter will not be allowed to set up any adverse right or title to their landlords, unless they prove that they disclaimed holding of them, or in good faith abandoned the premises, or asserted and claimed an adverse right with notice thereof to their landlords three years previous to the institution of the suit. Allen v. Paul, 24 Gratt. 332. See generally, monographic note on “Adversary Possession” appended to Nowlin v. Reynolds, 25 Gratt. 137.
VIII. RENEWAL IN GENERAL.
By Holding Over. — Where a tenant in possession under a lease continues in possession after the expiration of the term, the law implies a renewal of the lease on the same terms. Voss v. King, 38 W. Va. 607, 18 S. E. Rep. 762. See section “II. Kinds of Tenancies,” subsection “2. Year to Year.”
Effect of General Covenant for Renewal. — It is well settled that a general covenant for renewal in a lease does not imply a perpetual renewal. The most a lessor is bound to give on such a covenant is a renewal for one term only. Thus where land was rented for one or ten years at twenty-five dollars per annum, with the following provision “renewable, or pay for the improvements at their valuation” and the lessee holds over without any new agreement after the expiration of a renewal of ten years, the lessor was entitled to the possession of the premises at the end of any one year. King v. Wilson, 98 Va. 259, 35 S. E. Rep. 727; Peirce v. Grice, 92 Va. 763, 24 S. E. Rep. 392.
By One Joint Lessee — Notice.—where six parties become joint lessees of real estate for the term of five years, with the privilege of continuing the lease for an additional term of five years, upon giving sixty days’ notice prior to the end of the term, one of the lessees has no power to extend the lease by giving the required notice unless the other lessees concur therein. Howell v. Behler, 41 W. Va. 610, 24 S. E. Rep. 646.
*739 By Purchasers of Share of One Joint Lessee- Notice* —A lease is made to six joint lessees for five years, with the privilege of an extension for an additional five years, upon sixty days’ notice prior to the end of the term. Possession is taken by only one of the lessees, who dies before the expiration of the term. At the sale of the estate of the deceased lessee, a purchaser of the lease cannot extend the term for an additional five years, and a bill by him to enforce specific performance as to the extension of the term will be dismissed. Howell v. Behler, 41 W. Va. 610, 24 S. E. Rep. 646.
Lease Renewable Forever — Condition Not Complied with-Rent Paid Promptly — Notice to Quit-Tender.— A lease of land is made for ninety-nine years, renewable forever. It provides that the rent shall be paid annually on the first day of June in every year, and if the annual rent remains unpaid for six months after it becomes due, then the lessor shall re-enter and hold as formerly until all arrears in rent are paid. It is further provided that at the expiration of the term the lessor, in case the conditions are complied with, so as to entitle a lessee to a renewal, shall execute a new lease for the same term and on the same conditions as the first, except that one year’s rent extraordinary, and the charges of making and recording the conveyance, shall be paid by the lessee at the time of the renewal, and that the lease may be continued forever at the expiration of each term by making new leases, subject to the above conditions. The right to renew is not lost where all the rents were paid without demands, although not upon the exact date when due, and notwithstanding that for several years after the termination of the first lease, the rent was paid and accepted as formerly, without any offer or demand for renewal; the lessee having immediately, on notice to quit from the lessor, made a tender of everything required. Selden v. Camp, 95 Va. 527, 28 S. E. Rep. 877.
IX. RENT.
1. IN GENERAL.
Definition. — ’Rent signifies a compensation or return, being in the nature of an acknowledgment given for some corporeal inheritance, and though of late years it usually consists of money, yet formerly it consisted of, and still may consist of, things incapable of any profit. Newton v. Wilson, 3 H. & M. 470.
How True Rental Estimated. — The true annual rental value of land is not the value of all the farm products which can possibly be realized from its use when the land is stocked, farmed, and managed with the greatest skill and industry, but it is the price which a prudent and industrious farmer can afford to pay for its use, after taking into consideration the probable amount and market value of his crop, and the probable injuries thereto resulting from the ordinary changes of climate and season. Moore v. Ligon, 30 W. Va. 146, 3 S. E. Rep. 572.
In estimating the rents and profits of land, which has been wrongfully held by the vendor in a contract for its sale, the annual value of the land in the hands of a prudent and discreet tenant upon a judicious system of husbandry is the proper rule in the case, which should be influenced in some measure by the mode of treatment by the occupant. Bolling v. Lersner. 26 Gratt. 36.
Landlord Has Insurable Interest In Tenant's Furniture. — Where a tenant owes rent to his landlord, the latter has an insurable interest in the tenant’s furniture, while on the premises, as such is liable by statute for the debt of the tenant. Mut., etc., Ins. Co. v. Ward, 95 Va. 231, 28 S. E. Rep. 209.
Ground Rents in *779— Scale of Depreciation.— Where there was conveyance of land in fee simple in 1779, upon a ground rent, charged thereon, payable in current money, the rent was subject to the scale of depreciation. Watson v. Alexander Wash. 340.
Rents Reserved by Lord Fairfax -Rents Charge.— The rent of five shillings sterling reserved by Lord Fairfax upon lots in the town of Winchester. Va., were not quit rents, but rents charge. Nor were such rents destroyed by any of the acts of the commonwealth passed during the Revolutionary War. Marshall v. Conrad, 5 Call 364.
2. WHO ENTITLED TO RENT.
Land Sold under Decree. — Land was sold under decree of court after a contract had been made for its rental. The purchaser was complete owner from the day of sale, and was entitled to the rent falling due thereafter. Taylor v. Cooper, 10 Leigh 317.
Guardian Leasing Ward’s Land. — A guardian may lease the lands of his ward, during infancy, if the guardianship so long continues, and may reserve the rents to the ward or to himself; and payment of the rent, in either case, to the guardian, would be good. Ross v. Gill, 1 Wash. 87. See monographic note on “Guardian and Ward’’ appended to Barnum v. Frost, 17 Gratt. 398.
Devise of Rents and Reversion — Purchase of Reversion by Lessee. — The owner of land leased it for a term of twenty years, with the privilege to the lessee to end the term at any time on paying five shillings. The lessor then devised the annual rental to his daughter, and the reversion to his son, who sold to the lessor, and the latter immediately terminated his lease. It was held that the lessee could not disappoint the legatees, and he was decreed to pay them the rent. Graham v. Woodson, 2 Call 249.
3. WHO LIABLE FOR RENT.
When Part Only of Joint Lessees Take Land. — Where two of four joint lessees of land take possession in accordance with the agreement made between the owner and all of the lessees, the occupancy of the two is the occupancy of all, and they are all lessees of the landlord and are responsible to him in an action for use and occupation, regardless of their relations infer se. Goshorn v. Steward, 15 W. Va. 657.
Death of Tenant during Term — Estate Liable. — When a married woman becomes lessee of property for a term of years, her estate is liable for rent during the whole term, although she died soon after making the lease, and the property is occupied by others, as the lease continues as the property of the estate. Hutchings v. Commercial Bank, 91 Va. 68, 20 S. E. Rep. 950.
Lis Pendens — Successful Claimants. — Where the purchaser of property at a judicial sale had notice of a pending suit, setting up an adverse claim to the property, he is liable to the adverse claimants for rent, they being adjudged entitled to the property, I although he immediately delivers possession, and shortly after title, to another, who is insolvent. Simpson v. Dugger, 88 Va. 963, 14 S. E. Rep. 760.
Partnership Occupying Premises under Unauthorized Lease —One member of a partnership without I authority from his copartners leases a tenement for a term of years by deed, which he signs and j seals in the partnership name. The house is used 1 and occupied for a portion of the term for partner- *740 slip purposes, ana the yearly rents are credited to the lessor on the hoots of the partnership. The partner who signed the deed having died, his surviving partners abandon the tenement, and the executor and devisee of the lessor flies a hill against them and the administratrix of the deceased partner for specific performance, and for a decree for rents for the residue of the term. It was held that although the deed of lease executed by one partner alone was not binding upon the partners, yet the agreement for the lease for the use of the partnership was binding on them, and was not extinguished by the deed, and as the partnership took the benefit of the lease, the surviving partners shall execute the agreement, and pay the rents for the whole term. Kyle v. Roberts, 6 Leigh 495.
Tenant Who Has Enjoyed Land. — If a tenant has enjoyed the land, he cannot repel the landlord’s claim or rent, by saying “he has nothing in the land,” or that the conveyance was void. Watson v. Alexander, 1 Wash. 340.
Voluntary Surrender of Premises to Sheriff. — In a suit between third persons and a lessor, to which the tenant was not a party, the sheriff was directed by a decree to rent out the demised premises, which was accordingly done and the tenant yielded possession. As the decree did not direct the sheriff to evict the tenant, and there was no paramount title under which he might have been evicted, his surrender did not release him from the payment of rent. Murray Caldwell & Co. v. Pennington, 3 Gratt. 91.
Absolute Sale — Intention to Reserve Rent. — Where there was an absolute sale of property, but the intention of the parties was to reserve the rent to the grantor for a number of years, the grantees incur a personal obligation to account to the grantor for the rent. Kyles v. Tait, 6 Gratt. 44.
Covenant to Deliver Possession on Sale — Assignment —Surrender.—Land was leased for a term of years with the understanding that if the lessor sold the premises during the term the lessee should give possession at the end of the current year. The les' see assigned the lease with a similar provision, and the assignee, the plaintiff, assigned the term to the defendants, reserving a yearly rent to be paid as long as the lease lasted, with the provision that if the original lessor should sell the property agreeably to the original contract between him and his lessee, then the latter contract should expire. It was held that the defendant was not relieved from his covenant to pay rent by the sale of the premises, if there was no surrender. Dudley v. Estill, 6 Leigh 562.
Lessee Stipulating to Pay Rental Until Well Is Completed. — A person who accepts an oil or gas lease, with a stipulation therein contained to pay a monthly rental until a well is completed, or until the termination of a certain fixed term, is bound to pay such rental, although he does not within such term enter upon the land and complete the well, unless he was prevented from doing so by the plaintiffs and not by mere personal default.. Lawson v. Kirchner, 50 W. Va. 344, 40 S. E. Rep. 344.
4. APPORTIONMENT AND ABATEMENT.
Partial Eviction by Landlord Suspends Entire Rent.— An eviction of the tenant by the landlord from a portion of the premises suspends the payment of the entire rent during the continuance of the eviction. Tunis v. Grandy, 23 Gratt. 109.
Same — Crop of Hay Mowed and Taken Away. — A landlord entered upon a part of leased premises, and mowed and carried away the hay without the consent and against the will of his tenant, who nevertheless continued to occupy the premises until the end of the year. In an action of assumpsit for the use and occupation of the land it was held that by such entry the landlord lost the benefit of the entire contract, and was not entitled to recover any portion of the rent. Briggs v. Hall, 4 Leigh 484, 26 Am. Dec. 326.
Complete Destruction of Premises. — It was agreed in the lease of a mill that the lessee should keep it in repair, except that heavy repairs, as injury by floods to the dam or forebay, or if the main shaft or wheel should give away, requiring a new one, should be made by the lessor in a reasonable time, which should not operate to suspend the rent. The mill was completely destroyed by an accidental Are, and the lessor refused to rebuild. The rent was held to be suspended from the time of the Are. Thompson v. Pendell, 12 Leigh 591.
Possession under Contract Held Void — Chargeable for Time Held. — Where a purchaser under a contract with a married woman was deprived of his purchase by reason of the fact that the contract was held not to be binding upon her, he was chargeable with the fair rental value of the land while he had it in possession, in the condition in which it was at the time he took possession thereof. Moore v. Ligon, 30 W. Va. 146, 3 S. E. Rep. 572.
Same — Improvements—Taxes.—Where a purchaser under a contract of sale with a married woman enters upon land and makes valuableimprovements thereon, which greatly enhances the value thereof, and the contract was held not binding upon the married woman, the tenant was entitled to abatement on the amount of rent, with which he was chargeable, the value of the improvements, and all taxes upon the land paid by him while in his possession. Moore v. Ligon, 30 W. Va. 146, 3 S. E. Rep. 572.
Lease of Mill and Negro Miller — Emancipation.—A. lease was made of a mill together with a tract of land adjoining, and a negro man as a miller, for a term of years, rendering an annual rent; the miller had previous to the lease been emancipated by the lessor by a deed entered of record, and before the expiration of the first year left the services of the lessee. It was held that the lessee was entitled to an apportionment of the rent. Newton v. Wilson, 3 H. & M. 470.
Two Leases — Partial Eviction — Partial Possession— Distress — Action for Use and Occupation. — If a tenant under a second lease is put into possession of the whole of the demised premises, and is afterwards evicted from a part thereof by the lessee under the first lease, then the rent will be apportioned, and the lessor may distrain for it. But if the lessee under the first lease is in possession, so that the lessee under the second lease cannot get possession of a part of the premises demised to him, then the second lease as to this part is void and the lessor cannot distrain for a portion of the rent, though he may recover the fair value of the balance of the premises in an action for use and occupation. Tunis v. Grandy, 22 Gratt. 109.
Partial Recovery under Title Paramount. — If part only of leased lane is recovered by a third person by a title paramount to that of the lessor, such an eviction is a discharge of so much of the rent as is in proportion to the value of the part evicted. Tunis v. Grandy, 22 Gratt. 109.
Possession of Wrong Land by Mistake. — Where the vendor of land delivers to the vendee by mistake *741 other land, which does not belong-, to him, and the vendee is evicted, he will not be compelled to pay-rent Tor the time he remained in possession, although he holds the full quantity purchased by certain metes and bounds. Nelson v. Suddarth, 1 H. & M. 850.
Deprivation of Crops by Threats. — While a suit was pending by creditors of a deceased person to subject land to the payment of their debts, it was rented by the owners for three years with the agreement that if it should be sold during the term then the lease should terminate on April 1st following the sale. In June of the last year of the term it was sold, and in consequence of the threats of the purchasers, one of whom was one of the lessors, to reap any crops that might be sowed, the lessee did not sow any fall crops. It was held that he was entitled to a deduction from his rent on that account. Mason v. Moyers, 2 Rob. 606.
Evidence under General Issue. — in an action of debt for rent, on the plea of the general issue the defendant may give in evidence special circumstances showing that the rent ought to be apportioned. Newton v. Wilson, 8 H. & M. 470. See section on "‘Evidence,” infra.
5. INTEREST.
Not Allowed When Sufficient Property on Premises Liable to Distress. — Interest on rents in arrear ought not to be allowed if there were always effects on the premises, liable to distress, sufficient to have satisfied the rent, which were not paid, though demanded by the landlord. Dow v. Adam, 6 Munf. 31.
Interest on rents will not be allowed where the lessor allows it to accumulate, because he might have distrained l'or it if it were certain, ff it was uncertain, interest-was not demandable. Skipwith v. Clinch, 2 Call 353.
Depends on Circumstances. — Interest cannot be recovered as a matter of course in actions for the recovery of rent, but it may be given under circumstances to be judged of by the jury. Mickie v. Lawrence, 5 Rand. 574.
Where a jury state in a special verdict the circumstances under which they allowed interest in an action for the recovery of rent, the court should disallow the interest if, under the circumstances stated, interest ought not to be allowed. Dow v. Adam, 5 Munf. 21.
Allowed on Estimated Rents. — Where land is occupied by consent of the owner it is proper to charge interest upon estimated rents and profits. Vance v. Evans, 11 W. Va. 342.
When there is a decree for specific performance of a contract for the sale of land, and for an accounting of the rents and profits, although in such case the rents are estimated, it is proper to charge interest on them. Bolling v. Lersner, 26 Gratt. 36.
Interest Not Allowed. — But interest was not allowed on estimated rents and profits in Roper v. Wren, 6 Leigh 38, and Bayne v. Graves, 5 Leigh 561.
Not Recoverable by Way of Damages, — Interest is not recoverable by way of damages in an action of debt for rent in arrear. Cooke v. Wise, 8 Hen. & M. 463.
Not Allowed on Rents in Arrear. — in Kyle v. Roberts, 5 Leigh 495, interest was not allowed on balance of rents in arrear.
Allowed Where Tenant Attempts to Defeat. — In Graham v. Woodson, 2 Call 249, interest was allowed on rents in arrear, as the defendant by uncon-scientions cone net had endeavored to defeat the rents altogether.
Delay in Prosecuting Claim for Ground Rents. — It was held in Mulliday v. Machir, 4 Gratt. 1, that the proprietor of land upon which rent was reserved, having delayed for many years to prosecute the claim for the ground rents, would not be allowed interest thereon.
Replevy Bond — Prom Date of Bond. — Judgment ought not to be rendered on a three months’ replevy bond for interest from a day anterior to the date of the bond, but it may be rendered for interest from the date of the bond on the rent and costs of the distress. Williams v. Howard, 3 Munf. 277.
Act of fiarch 2, 1827. — Under the act of March 2, 1827, a landlord was entitled to interest on rent in arrear, from the time it was due. Brooks v. Wilcox, 11 Gratt 411.
6. LIEN.
By Statute in Virginia. — It was held in Re Wynne, Chase (U. S.) 228, 80 Fed. Cas. 752, which case came up from the United States circuit court for Virginia, that by § 12, title 41, ch. 128, of the Revised Code of Virginia adopted in 1860, a lien for rent was given to the Jandiord on goods upon demised premises, independently of any proceeding by distress or attachment.
By Statute in West Virginia. — A lien is given by § 12, ch. 93, W. Va. Code 1891, for one year’s stipulated rent, whether accrued or not, upon the goods of a tenant on the premises, over liens created after the commencement of the tenant's term, although no distress warrant has been issued for such rent. Anderson v. Henry, 45 W. Va. 319, 31 S. E. Rep. 998.
Goods ilust Be on Demised Premises. — The landlord’s lien for a year’s rent on the goods and chattels of his tenant does not extend to protect them from being taken by virtue of any execution, except in cases when the said goods and chattels shall be in or upon the demised premises. Geiger v. Harman. 3 Gratt. 130.
Priority — Lien for Taxes Superior. — The lien for taxes in West Virginia is superior to the landlord’s lien for rent. Bartlett v. Loundes, 34 W. Va. 493, 12 S. E. Rep. 762.
Same — Deed of Trust by Tenant — New Term. — A deed of trust was given on personal property by the tenant holding for a term of years, the lease containing no agreement for renewal. At the expiration of the term, a new term was agreed upon on terms materially different from the first lease. This was held to create a new tenancy and to give the deed of trust priority over the lien for rent due under the last lease. §§ 11 and 12, ch. 134, Code 1873, construed. Upper Appomattox Co. v. Hamilton, 83 Va. 319, 2S. E. Rep. 195; Wades v. Figgatt, 75 Va. 575; Richmond v. Duesberry, 27 Gratt. 210.
Same — Tax Sale — Purchase by Lessee — Mortgage-Distress. — Goods are on leased premises, liable to rent. They are levied upon for taxes against the lessor, and sold therefor on the premises without removal, the lessee becoming the purchaser, and, he not paying the purchase money, two parties assume payment of it; and shortly after, while the property remains on the leased premises, the lessee executes to these two parties a deed of trust conveying such property to indemnify them against loss in case they should pay; the sheriff who sold the property still retaining possession after the execution of such deed of trust until actual payment to him, which payment is made by the parties who assumed it. After such payment the trustee takes posses *742 sion of the property, and a distress for rent is made on the property within thirty days after its removal from the premises. The distress for rent has preference over the deed of trust. Bartlett v. Loundes, 34 W. Va. 493, 12 S. E. Rep. 762. See monographic note on “Subrogation” appended to Janney v. Stephen. 2 Pat. & H. 11.
Same — Assignment and Purchase of Furniture — Deed of Trust — Holding Over — Distress.—On January 1st,, 1871, a house was leased for the period of one 3fear. In March, without the assent of the lessor, a third person took the lease, and purchased his furniture on the premises, having borrowed the money and conveyed the furniture to secure the creditor. The assignee paid rent to the lessor and at the end of the term held over, and in March, 1872, without the consent of the lessor turned the house 'and furniture over to another, who paid the rent to the lessor until July or August, failing to pay any rent for the rest of the year. Then the lessor sued out a distress warrant which was levied on the property already conveyed in the trust deed. The holding over by the assignee in 1872 was held a new lease, and the lien of the deed of trust existing then, was valid against the lien for rent for 1872. Richmond v. Duesberry, 27 Gratt. 210, and note.
7. PAYMENT.
When Entitled to Additional Time. — Where the lessee of a mine has made frequent efforts to pay the rent, and the lessor has purposely prevented him, the lessee should be given additional time in which to pay the rent. Young v. Ellis, 91 Va. 297, 21 S. E. Rep. 480.
8. SET-OFF.
Lease from Executor — Debt Due by Testator. — A tenant having leased land from an executor cannot set off debts due to him by the testator against the rent. It might be otherwise, if the executor has acknowledged that he had a sufficiency of assets. White v. Bannister, 1 Wash. 166. See monographic note on “Executors and Administrators” appended to Rosser v. Depriest, 5 Gratt. 6.
Rents Payable Direct to Cestui Que Trust — Drafts of Trustee. — By order of court the rents of trust subject are decreed to be paid directly to the cestui aue trust by the receiver. The trustee was held to have no powers in the matter, and his drafts against the lessee could not be set off against the rent. Witt v. Warwick, 83 Va. 699, 3 S. E. Rep. 352.
9. RECOVERY.
a.Assumpsit. — See monographic note on “As-sumpsit” appended to Kennaird v. Jones, 9 Gratt. 183.
On Implied Promise. — Assumpsit for the use and occupation of land by permission of the plaintiff lies on an implied as well as an express promise to pay rent. Sutton v. Mandeville, 1 Munf. 407, 4 Am, Dec. 549.
On Express Promise. — Assumpsit for the use and occupation of land by permission and assent of the plaintiff, will lie at common law on an express promise to p-^y the plaintiff a certain sum, or in general terms to pay him to his satisfaction for such use and occupation. Eppes v. Cole, 4 H. &M. 161, 4 Am. Dec. 512.
Lease Not Sealed — Statute.—The action of assump-sit for use and occupation of land is maintainable under the statute, § 7, ch. 93, W. Va. Code 1868, where the agreement of lease is not by deed. Goshorn v. Steward, 15 W. Va. 657.
Plaintiff Confined to Terms of Contract. — In an action of assumpsit by the lessee against the lessor, the plaintiff will be confined to the terms of the contract sued on, and cannot recover upon a verbal understanding made contemporaneously with the written lease. Kline v. McLain, 33 W. Va. 32, 10 S. E. Rep. 11, 5 L. R. A. 400.
b. Attachment. — See monographic note on “Attachments” appended to Lancaster v. Wilson, 27 Gratt. 624.
Rent Not Due — Amount.—An attachment against the estate of a tenant for rent to become due at a future day cannot issue for more than the rent next due. Redford v. Winston, 3 Rand. 148.
Same — Revised Code. — By § 9, ch. 113,1 Rev. Code, the lessor is not entitled to an attachment for rent not yet due, before the commencement of the term for which rent is to be paid, Johnson v. Garland, 9 Leigh 149.
Same — Same—Quashal.—If an attachment for rent not yet due be issued before .the commencement of the term for which it is to be paid, and levied on the goods of the lessee, and the lessee thereupon enters a recognizance to pay the rent, he may, notwithstanding, move the court to which the process is returned to quash the attachment for irregularity. On such motion the court ought to quash the attachment, and the recognizance likewise, which was founded upon it Johnson v. Garland, 9 Leigh 149.
Same — Removal of Goods — Plea by Tenant. — Where an attachment is issued against the estate of a tenant for rent to become due at a future day, on the oath of the landlord that he has sufficient grounds to suspect that the tenant will remove his effects out of the county or corporation before the expiration of his term, it is not competent for the tenant on the return of the attachment to plead that his landlord had not sufficient grounds to suspect that the tenant was about to remove his effects. Redford v. Winston, 3 Rand. 148.
Grounds — Property under Deed of Trust — Threatened Removal by Trustee. — When the lessee, after removal of property to the leased premises, executes a deed of trust thereon, threatened removal of such property by the trustee authorizes attachment for rent. Offterdinger v. Ford, 92 Va. 636, 24 S. E. Rep. 246.
Same — Removal of Goods — Construction of Statute.— The statute, § 4, ch. 148, Code 1873, authorizing an attachment against a lessee’s goods for rent not due, when be is removing, etc., so that probably sufficient goods will not be left to satisfy the claim for rent when due, applies to all removals, in regular course of business or otherwise, as there is no exception made in the statute, and the language is plain. Offterdinger v. Ford, 92 Va. 636, 24 S. E. Rep. 246. See further, monographic note on “Attachments” appended to Lancaster v. Wilson, 27 Gratt. 624.
Interpleading. — The section of the statute which allows interpleading in attachments without bail does not extend to attachments for rent. Hallam v. Jones, Gilmer 142.
c. Covenant. — See monographic note on “Covenant, The Action of.”
In covenant on a lease stipulating to pay rent, and binding the lessee to board the lessor and wife part of the term and to return the premises uninjured, the declaration described so much of the agreement as related to leasing and paying rent,- and charged the lessee with having broken the covenant generally, and particularly in failing to pay rent, but said nothing about other stipulations. *743 This variance was not substantial. Backus v. Taylor, 8 Munf. 488.
d. Debt. — See monographic note on “Debt, The Action of” appended to Davis v. Mead, 13 Gratt. 118.
Plaintiff with No Title. — in an action of debt for rent, when the plea is nil debit, if the tenant has enjoyed the land uninterruptedly under the lease, the plaintiff is eutitled to recover, whether he had a title to the land or not. Ross v. Gill, 1 Wash. 87.
Offset of Damages for Failure to Repair. — If a landlord covenants to make repairs to premises, the tenant may notify him to do so, and if he fails or refuses to comply with such covenant, the tenant may make the repairs, and in an action of debt instituted by the landlord for the rent, may recoup the same as offsets or payment against the rent demanded. Cheuvront v. Bee, 44 W. Va. 10B, 28 S. E. Rep. 751.
e. Distress.
(1) Right to Distrain.
Where Note Given for Rent. — A landlord taking the negotiable note of his tenant for rent may not distrainor sue for the rent until the maturity and nonpayment of the note. Hornbrooks v. Lucas, 24 W. Va 493.
Two Leases — Second Lessee Unable to Get Part of Premises. — When the same premises are demised to, two different tenants, under separate leases, executed at different dates, if the lessee under the first lea<*e is in possession of part of the premises, so that the lessee under the second lease cannot get possession thereof, then the second lease is void as to that part of the premises, and the lessor cannot distrain for a proportion of the rent. Tunis v. Grandy. 23 Gratt. 109.
Code 1873 — Rent Unpaid — Liability—Year’s Rent.— “One year’s rent” and “a year's rent,” are used in Code 1873, ch. 134. §§ 11, 12, to denote the amount of rent to be distrained for in the one case and to be paid, or secured in the other, and it matters not for what year it accrued. As long as any rent arising under the tenancy remains unpaid by the persons liable therefor, as soon as it becomes due the persons entitled to it may distrain the goods for an amount not exceeding the rent for a year. Wades v. Figgatt, 75 Va. 575.
(2) Property Liable.
ilust Be on Premises. — A distress for rent cannot be made off the demised premises, and in such case an attachment will be preferred to it. Mosby v. Leeds, 3 Call 439. See Geiger v. Harman, 3 Gratt., 130.
Same — Property of Stranger — Revised Code. — it was hWd in Davis v. Payne, 4 Rand. 332. that the property of a third person never was liable to distress for the rent of the tenant, unless it were found upon the premises; and even where it was found there, the distress was taken away by Act 1818, 1 Rev. Code, ch. 113, § 15.
Exception — Conveyance by Trust Deed of Property on Premises. — A tenant, having household furniture on the leased premises, conveyed it by deed of trust. to trustees for payment of just debts; but the goods - remained in possession of the tenant on the ‘ premises, and the lessor distrained them for rent I in arrear. These goods were not exempted from 1 distre.ss within the meaning of 1 Rev. Code, ch. 113, § 15. Harvie v. Wickham, 6 Leigh 236.
(3) Proceedings to Distrain.
(a) Con. titutionality. — in Anderson v. Henry, 45 W. Va. 319, 31 S. E. Rep. 998, the 14th amendment to the federal constitution was held not to render the local statute allowing distress for rent unconstitutional and void.
(b) Warrant and Affidavit,
Warrant flust Be in Name of State. — A warrant of distress is a writ, within the meaning of the constitutional provision requiring writs to run in the name of the state. Beach v. O’Riley, 14 W. Va. 55.
Certainty in Describing Premises. — A distress warrant ought not to be quashed for uncertainty in describing leased premises, where the description was; “A certain messuage and tenement situated in the city of Huntington, in Cabell county, West Virginia, rented by the Central Land Company to F. J. Calhoun.” — it not being necessary to describe the premises in such a case as is necessary in case of a conveyance. Central Land Co. v. Calhoun, 18 W. Va. 361.
Returned to Circuit Court — Dismissed by Plaintiff-Same Pleadings Proper in County Court. — Rent reserved in salt being in arrear the landlord dis trained therefor, and the affidavit and warrant were returned to the circuit court, where the tenant appeared and a jury was impaneled to find the value of the rent in money; but not being able to agree they were discharged, and the landlord dismissed the case. Using the same affidavit and warrant he applied to the county court to ascertain the value, which course was regular. See i Rev. Code, ch. 113, §12, p. 449; Brooks v. Wilcox, 11 Gratt 411.
(c) Hearing and Determination.
Object in Proceeding before Jury. — The only object of proceeding before a jury in the case of a distress for rent, is to ascertain the value in money of the rent in arrear. It is not 2iecessary for the landlord to prove to the jury that a distress warrant has been levied for rent in something other than money, and that it is due and in arrear. Brooks v. Wilcox, 11 Gratt. 411.
Jury Sworn to Find Rent “Said to Be Due.” — Tn an action of distress for rent, where a jury was impaneled to ascertain the value of the rent in arrears in money, it was not error to swear the jury to ascertain the value of the rent said to be due. Brooks v. Wilcox, 11 Gratt. 411.
(d) Levy.
Officer May Make Second Levy. — An officer levying a distress warrant, if he thinks he has not taken sufficient effects to satisfy the claims for rent, may make a second levy. Brooks v. Wilcox, 11 Gratt 411.
(e) Sale.
By Proper Officer. — Property distrained for rent can be sold only by an officer duly qualified as such, as by a sheriff or constable. Ferguson v. Moore, 2 Wash. 54.
Landlord Cannot Sell —Property a Pledge. — Although a landlord may levy a distress warrant personally or by means of an agent, he cannot sell the dis-trained effects, which in such case are only to be held as a pledge to compel the tenant to pay the rent. Smith v. Ambler, 1 Munf. 596.
Surplus Belongs to Tenant. — In a proceeding by distress for recovery of rent, under ch. 113, 1 Rev. Code 1819, where the value of rent in arrear has been found by the jury, and the court orders an officer to sell the property distrained, the proceeds of the sale after the deduction of the rent, interest and costs, should be turned over to the tenant. Brooks v. Wilcox, 11 Gratt. 411.
(f) Bonds.
Where Returnable. — A bond to release property distrained for rent must be returned to the court to which the officer levying the distress belongs or to *744 the court of that county in which the land lies. Ferguson v. Moore, 2 Wash. 54. See generally, mon-ographic notes on “Bonds” appended to Ward v. Churn, 18 Gratt. 801, and “Statutory Bonds” appended to Goolsby v. Strother 21 Gratt. 107.
• Execution by Original Lessee Not in Possession. — A replevy bond given in a distress proceeding is good if executed by the original lessee, though he is njot the tenant in actual possession, nor the owner of the property distrained, if he had assigned his lease to a third person, without the privity or assent of the lessor. Ferguson v. Moore, 2 Wash. 54.
• Remedy on — Taken by Proper Officer. — A landlord is not entitled to the summary remedy by motion on a three months’ replevin bond, unless it appear that such bond was taken by the sheriff or other officer legally authorized to make distress and sell the distrained efiects. Smith v. Ambler, 1 Munf. 596.
Same — When Distress for More Rent Than Due. — A landlord may recover on a forthcoming bond given on a distress warrant for rent, though the warrant of distress was for more rent than was due. Carter v. Grant, 32 Gratt. 769.
Same — Contract of Rent riust Be Proved. — In summary proceedings on a forthcoming bond given on distress for rent, the plaintiff must prove the contract of rent for which the distress was sued out. Carter v. Grant, 32 Gratt. 769.
Same — Defenses.—In an action of debt on a forthcoming bond, for property levied on a distress warrant, the tenant may plead and show in defense that the distress was for rent not due from him at the time of suing out the distress warrant mentioned in the bond, since § 5, ch. 142, of the Code, expressly allows such de'fense. Hall v. Wadsworth, 35 W. Va. 375, 14 S. E. Rep. 4.
■ If the defendant in a motion on a forthcoming bond appears and makes defense, and the plaintiff proves the execution of the bond and its forfeiture, on demurrer to the evidence judgment should be given for the plaintiff, though he fail to produce or prove the distress warrant on which the bond was based. Central Hand Co. v. Calhoun, 16 W. Va. 361.
Payable to Agent of Creditor — Good as Common-Law Bond. — A forthcoming bond for property levied on under a distress warrant, § 1, ch. 142, of the Code, providing-that the officer levying a distress warrant may take from the debtor a bond, etc., “payable to the creditor,” is not good as a statutory bond, if made payable to one as agent of the creditor; but it may be upheld as a good common-law bond in an action of debt thereon, when the obligor has enjoyed benefits under it. Hall v. Wadsworth, 35 W. Va. 375, 14 S. E. Rep. 4.
(4) Wrongful Distress.
Declaration — Allegations.—In’an action under 1 Rev. Code, ch. 113, § 5, for wrongful distress for rent when no rent is in arrear, the declaration must set forth' the relation of landlord and tenant existing between the plaintiff and the defendant, otherwise it is bad on general demurrer. Jones v. Murdaugh, 2 Heigh 447.
Same — Same—Variance.—In an action on the case for wrongful distress, the plaintiff alleged that he held under a lease for five months for twenty dollars payable in repairs and labor. It appeared at the trial that the lease was for twelve months and for money rent of sixty-five dollars. The variance was fatal. Olinger v. McChesney, 7 Leigh 660.
Same — Same—Compensatory Damages. — In an action under § 2898, Va. Code 1887, for damages on account of illegal distress for rent, the declaration alleged that the defendant levied on $975 of goods to satisfy a claim for rent amounting to $400, and that in fact there was no rent due, and that the plaintiff thereby incurred expenses and losses by reason of being deprived of gains in his business. There being no allegation showing circumstances of aggravation, only compensatory damages could be recovered. Fishburne v. Engledove, 91 Va. 548, 22 S. E. Rep. 354.
Goods Not Sold — Trespass and Case May Both Be Brought. — where a distress is made for rent pretended to be due, when there is none due, and the goods distrained are not sold, the remedy is by action at common law, and trespass may be maintained. But the party suing is not obliged to bring trespass, as he may waive the trespass and bring case.’ Olinger v. McChesney, 7 Leigh 660.
Replevin Sued Out and Not Prosecuted Will Not Prevent Action on the Case, — where there is a wrongful distress, the fact that the party distrained upon sued out a writ of replevin which was never prosecuted, will not prevent him from maintaining case for the wrongful distress. Case will lie for suing out an attachment for rent maliciously and without probable cause. Olinger v. McChesney, 7 Leigh 660.
- No Relief in Equity but by Damages at Law. — Where a landlord distrains property as being fraudulently removed from the premises, and does not show that it was so fraudulently removed, nor that the distress is levied within the time allowed by law, nor that the property ever was on the demised premises, the tenant ought not to seek redress in a court of equity but by damages at law. Davis v. Payne, 4 Rand. 332.
X. ACTIONS IN GENERAL.
See section “IX. Rent,” sub-section “9. Recovery.”
1. LANDLORD AGAINST TENANT.
a. To Recover Possession.
Landlord Proper Plaintiff. — A landlord sells land in possession of bis tenant by agreement under seal and the tenant refuses to deliver possession. The landlord is the proper party to institute proceedings to obtain possession. Harrison v. Middleton, 11 Gratt. 527. See Hawkins v. Wilson, 1 W. Va. 121. See generally, monographic note on “Unlawful De-tainer” appended to Dobson v. Culpepper, 23 Gratt 352.
Recovery According to Description in Warrant or Lease. — Plaintiff in action for unlawful detainer may recover according to description of the premises in his warrant or in the lease under which the defendant received possession from him, and must, at his peril, point out the premises to the sheriff, being compelled to make restitution if he takes more than he has recovered. Emerick v. Tavener, 9 Gratt. 220.
Recovery of Entire Premises — Not Merely Part Occupied. — Lessor may recover entire premises demised, and not merely the part actually occupied by the defendants, in an action for unlawful de-tainer against his tenant holding over and disclaiming to hold under him. Emerick v. Tavener, 9 Gratt. 220.
Same — Alienation by Tenant. — Tenant alienating part or all of premises remains liable to his lessor In an action to recover possession of the whole premises, if possession be withheld after termination of the tenancy, whether such alienation be by sub-lease or by conveyance in fee with warranty, *745 and whether ihe act be ejectment or unlawful de-tainer. Emerick v. Tavener, 9 Gratt. 220.
Defenses — Forfeiture for Taxes during1 Tenancy.— The fact that during the tenancy the title of the landlord has been forfeited for the nonpayment of taxes on the land in controversy constitutes no valid defense to an action of unlawful detainer, brought to dispossess the tenant, as the plaintiff is entitled to be placed in statu quo, unless, perhaps, the tenant has made a distinct disclaimer, and has been holding adversely for more than three years, or can sustain some other valid defense. Voss v. King, 38 W. Va. 607. 18 S. E. Rep. 762.
Same — Conveyance by Landlord during Term. — Although a tenant cannot deny his landlord’s title at the time of the lease, he can show that subsequently the landlord has conveyed the land to another, in an action of unlawful detainer against the tenant for possession. Dobson v. Culpepper, 23 Gratt. 352.
Same — Lease Signed by Mistake Due to Fraud of Lessor. — In an action of unlawful detainer to recover possession of leased land, the lessee admits a lease, claiming that he signed it through mistake, that he was put in possession, erroneously supposing the landlord to have the better title, when as a matter of fact he himself was entitled to the land. It was held that if such mistake was induced by the fraudulent representations of the lessor, the lessee was entitled to such defence. Locke v. Frasher, 79 Va. 409.
b. To Recover Damages.
Abandonment of Lease — Amount of Damages. — If a lease is abandoned by the lessee, and he refuses to complete his contract, and after due notice the lessor sells the lease at public auction, damages may be recovered at once for the whole loss, and not merely for the loss up to the time of the sale. James v. Kibler, 94 Va. 165, 26 S. E, Rep. 417.
Same — Purchase by Lessor at Auction. — If the lessor, at a public auction of a lease which has been abandoned by the lessee, purchases the same, this will not prevent a recovery of damages by him for the breach of the contract. James v. Kibler, 94 Va. 165, 26 S. E. Rep. 417.
Failure to Develop Premises According to Contract.
—The remedy of the lessor of land for oil and gas purposes for the failure on the part of the lessee to develop the leased premises according to the contract, or to protect it from drainage from wells on adj acent property, is ordinarily by an action at law for damages. Harness v. Eastern Oil Co., 49 W. Va. 232. 38 S. E. Rep. 662.
Permanent Injury Due to Negligence. — Where premises are permanently injured by the negligence of the lessee, an action on the case may be brought by the lessor pending the lease, and the action will not be prevented by a covenant of the lessee to have the premises in good repair. It is not for the tenant to say that an action of covenant may be maintained against him for the same cause; for the lessor may have at his option either remedy. Moses v. Old Dominion, etc., Co., 75 Va. 95.
Assumpsit —- Breach of Covenant — Allegations. — Where an action of assumpsit is brought for damages for the violation of a covenant in a lease which provided for its renewal and which was conditioned on the performance of the terms of the lease, the lessee must allege a performance of such conditions, or a valid excuse for nonperformance. Grubb v. Burford, 98 Va. 553, 37 S. E. Rep. 4, citing Carroll Co. v. Collier, 22 Gratt. 302, 308; Metropolitan L. Ins. Co. v. Rutherford, 95 Va. 773, 30 S. E. Rep. 383, and authorities there cited.
Covenant to Keep In Repair — Damage by Lessee’s Negligence — Repairs by Lessor and New Lease — Liability of Lessee, — The lessor in a lease of a warehouse for three years covenanted that if the building should be so damaged by fire, or other cause as to make it untenantable, the lease should be void, and the lessee covenanted to leave the building in good repair, ordinary wear and tear excepted. The lessee stored in the building a large quantity of iron and nails, and during a storm a portion of the building, including all the floors and the roof, fell down. The lessor claimed that the lessee was liable for damages, which the latter denied, and the former with the latter’s consent, repaired the building, and the lessee again took possession and held under the lease. It was held that the lessor could sue in an action on the case against the lessee for the damage done to the building. Moses v. Old Dominion, etc., Co., 75 Va. 95.
Same — rieasure of Damages — in an action on the case by a landlord against his tenant for damages to a building, which the latter had covenanted to keep in repair, on refusal of the latter to repair, and the building having been repaired by the landlord with the tenant’s consent, the measure of damages is what was necessarily expended in placing the property in its former condition. Moses v. Old Dominion, etc., Co., 75 Va. 95.
c. Foil Injunction. — See monographic note on “Injunctions” appended to Claytor v. Anthony, 15 Gratt. 518.
Restrictions in Lease — Irreparable Injury. — When the lessee is restricted by the terms of his lease to a particular use of the premises, as a general rule equity will restrain him from using them in any other way, even though no irreparable injury will result from such other use. Frank & Co. v. Brunnemann, 8 W. Va. 462.
Same — Waste—Implied Agreement. — A court of equity will enjoin a tenant from doing a certain act, whether it is waste or not, if it be directly contrary to the tenant’s covenant, or even contrary to an implied agreement which is inferred from the course of dealing between the parties. Frank & Co. v. Brunnemann, 8 W. Va. 462.
Enjoining Waste — Dissolution of Order. — An order dissolving an injunction to restrain a lessee from erecting a stable on the leased premises without the consent of the lessor, is not erroneous, it providing that the stable should be removed at the expiration of the lease, should the lessor so insist, it being erected against her will. Hubble v. Cole, 85 Va. 87, 7 S. E. Rep. 242.
2. LANDLORD AGAINST THIRD PERSONS.
Officer Removing Goods without Paying Rent — Damages. — 'An officer under execution removes goods of a lessee without paying the rent due to the landlord. In an action by the landlord against the officer the just measure of damages is the value of the goods and not the amount ol rent in arrears. Crawford v. Jarrett, 2 Leigh 630.
3. THIRD PERSONS AGAINST LANDLORD.
Injury to Water Power by Erection of Boom. — A lessor who erects a boom in such close proximity to a milldam as to injure the water power of such dam, and thereby creates a nuisance against the same, is equally liable with his lessee with notice for the continuance of such nuisance. Pickens v. Coal, etc., Co. (W. Va.), 41 S. E. Rep. 400.
*746 Purchase of Salt— Possession Taken by Lessor — Destruction. — The owner of a salt factory leased it, reserving: rent in salt. In July the lessee sold to a third person all the salt then made, or that should be made before the next January, except what would "be due the landlord for rent. The purchaser sent for the salt early in December. A boat of it being: loaded, and being on the point of starting, the landlord forbade its being taken away, declaring he would warrant it for the rent. The sheriff then came, saying he had a warrant, and forbade the removal of the salt and the boatman left. The landlord took possession, and sent the boat down the river, where it was sunk. In an action of trover by the purchaser against the landlord, it was held that the salt belonged to the purchaser. Lewis v. Arnold, 13 Gratt. 454.
4. TENANT AGAINST LANDLORD.
Injunction to Enjoyment of Land — Action on Bond-Covenant. — Where the lessor prevents the lessee from enjoying the leased property by preliminary injunction which is afterwards dissolved, the fact that the lessee has a right of action on the injunction bond will not bar his action of covenant. Hubble v. Cole, 88 Va. 236, 13 S. E. Rep. 441, 29 Am. St. Rep. 716, 13 L. R. A. 811.
Same — Same-“Case.”—An injunction restraining a tenant from enjoying the leased premises was dissolved. The tenant may recover damages by action on the case, in addition to his remedy on the injunction bond. Hubble v. Cole, 88 Va. 286, 13 S. E. Rep. 441.
Failure to Deliver Possession — Ejectment—Measure of Damages. — in an action for damages for failure of the landlord to give possession of property which had been leased, or from which he has ejected the tenant, where the gist of the action is the deprivation of the benefit of the lease, whether the action is covenant or tort, the general rule is that the plaintiff is entitled, as the measure of the damages', to the difference between the rent reserved and the value of the premises for the term. He may also recover such special damages as have directly and necessarily been occasioned by defendant’s wrong ful act or default, but cannot recover what he might have made on the premises during his lease, nor for loss sustained by selling his stock, implements, etc., for less than their value. Robrecht v. Marling, 29 W. Va. 765, 2 S. E. Rep. 827.
The plaintiff rented a mill from the defendant, but possession was not delivered. No special damage being shown, the court held that the plaintiff in an action of covenant is entitled to recover only the difference between the rent contracted to be paid and a fair rent for the property at the time it should have been delivered. Newbrough v. Walker, 8 Gratt. 16, 56 Am. Dec. 127.
Specific Performance. — An executory lease that is unfair, unjust or unreasonable will not be enforced in equity. Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va. 84, 34 S. E. Rep. 923.
5. TENANT AGAINST THIRD PERSONS.
Trespass — Tenant Proper Plaintiff. — An action of trespass against a stranger should be brought by the tenant, and not by the landlord. Kretzer v. Wysong, 5 Gratt. 9.
Damage to Property — Measure of. — A life tenant in possession is entitled to sue for damages done the property, by which the rental value thereof is diminished or destroyed. The measure of damages, as in other cases, is the amount necessary to make good the loss, which must be determined by the jury from the facts and circumstances shown in evidence. Johnson v. Chapman, 43 W. Va. 639, 28 S. E. Rep. 744.
Injunction to Waste. — A person holding a valid executory oil and gas lease, executed by several of a number of cotenants, is such an inchoate interest in the land subject to such lease as will enable him to maintain an injunction to prevenía wrongdoer from committing waste by the extraction of such oil and gas. Trees v. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. Rep. 933. See monographic note on “Injunctions” appended to Claytor v. Anthony, 15 Gratt. 518.
Contract between Landlord and Railroad — Violation —Who Can Sue, — Where a landowner makes a contract with a railroad company to fence its right of way through his lands, and subsequently the landowner leases for a year to a tenant, and at date of lease the fence was in bad condition, and down in several places, the tenant cannot maintain an action for damages on the contract. Hoyleman v. Kanawha, etc., R. Co., 33 W. Va. 489, 10 S. E. Rep. 816.
XI. EVIDENCE.
. Sufficiency to Establish Lease. — A party who had signed an agreement to lease, told a third person that he had rented his property, and requested him not to say anything about it, presumably because he did not want it known until it was all arranged. This evidence was held insufficient to prove the writing to be an actual lease. Boisseau v. Fuller, 96 Va. 45, 30 S. E. Rep. 457.
Admissibility — Action to Recover Rent — Destruction of Buildings. — Where an action of debt is brought to recover rent for leased buildings, it is admissible evidence to show the destruction of the buildings, which occurred without the fault of the lessee,-as this exonerates him from the payment of the rent, by § 2455 of the Code. Richmond Ice Co. v. Crystal Ice Co., 99 Va. 239, 37 S. E. Rep. 851.
Same — Same—Occupation by Unsealed Lease. — In an action of assumpsit for use and occupation of land, occupation by permission of the plaintiff may be proved directly by the production and proof of a written lease, not under seal, if one has been entered into. Goshorn v. Steward, 15 W. Va. 657.
Same — Same—Amount of Recovery by Unsealed Lease. — in an action of assumpsit for the use and occupation of land, the agreement not being under seal and being fully executed on the part of the plaintiff, he is entitled to introduce the written agreement, which fixes the rent, in evidence of the amount of recovery in the action. Goshorn v. Steward, 15 W. Va. 657.
Same — Same—Same—Nonsuit.—Where an action of assumpsit is brought for the use and occupation of a tract of land, and the declaration contains only two counts, one of which is indebitatus assumpsit, and the other on the quantum meruit, and a bill of partic. ulars is filed with the declaration, if the defendants interpose the plea of nonassumpsit for five years, although a written agreement not under seal may appear in evidence, fixing the terms of the rental for one year, when the possession and occupancy continue for nearly six years thereafter, under the West Virginia statute, the plaintiff shall not be nonsuited by reason of the writing appearing in evidence, but the same may be considered in fixing the value of the rental. Atkinson v. Winters, 47 W. Va. 226, 34 S. E. Rep. 834.
Same — Same—To Prove Owner. — In an action of debt on a bond given for the lease of certain *747 premises, evidence is admissible to prove who is in fact the true owner of the land. Barley v. Barley, 1 Va. Dec. 103.
Same — Parol Evidence to Explain Lease. — Parol evidence of a usage for the off-going tenant to have the way-going crop is not admissible to explain a written contract of lease for a fixed and certain period. Harris v. Carson, 7 Leigh 682.
Same-Same — Inconsistent with. — Where a lessee had, hy his written contract with the lessor, until the end of his term to make certain repairs to the property, a verbal agreement to make them at an earlier period is inconsistent with the written contract, and therefore does not come within the exception to the rule that parol evidence may be introduced when it establishes an agreement additional to but consistent with the written agreement. Colhoun v. Wilson, 27 Gratt. 639.
Same -Same — What Included in Lease. — If it cannot be ascertained by the written contract of lease whether a parcel of the demised premises is included therein, it is permissible to show this by extrinsic evidence. Crawford v. Morr, 5 Gratt. 90.
Same— Action on Covenant to Renew — Future Profits — Damages.—In an action for the breach of a covenant to renew a lease, evidence of the future profits to be made from the property, if a certain price can be obtained for the product thereof, is inadmissible on the question of damages. Grubb v. Burford, 98 Va. 553, 37 S. E. Rep. 4.
Same — Same—Parol Evidence to Modify Lease-Later Lease. — in an action of assumpsit for damages for failure to renew a lease, where the plaintiff had introduced evidence that a certain lease had been modified by a parol agreement, and it was denied by the defendant, it was error to refuse to admit a later lease between the parties, which provided that it should not conflict or interfere with the lease sued on, to rebut such evidence. Grubb v. Burford, 98 Va. 553, 37 S. E. Rep. 4.